Jacqueline Taitano Terlaje, Esq.
**LAW OFFICE OF JACQUELINE TAITANO TERLAJE, P.C.**
284 W Chalan Santo Papa
Hagåtña, Guam   96910
Telephone: 671.648.9001
Facsimile: 671.648.9002
Email: info@terlajelaw.com
Attorney for Plaintiff
Gateway Network Connections, LLC


Peter C. Perez, Esq.
**LAW OFFICE OF PETER C. PEREZ**
238 Archbishop Flores St., DNA Ste 802
Hagåtña, Guam 96910
Attorney for Plaintiff
Asia Connectivity Elements, Inc.

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| GATEWAY NETWORK CONNECTIONS, LLC, a Guam limited liability company and ASIA CONNECTIVITY ELEMENTS, INC., a Guam corporation,<br><br>                                        Plaintiffs,<br><br>                    vs.<br><br>RUSSELL MATULICH,<br><br>                                        Defendant.<br>_____ | CIVIL CASE NO. CV_____<br><br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs GATEWAY NETWORK CONNECTIONS, LLC ("GNC") and ASIA CONNECTIVITY ELEMENTS, INC. ("ACE"), by and through their undersigned attorneys, bring this Complaint against Defendant RUSSELL MATULICH ("MATULICH"), and in support thereof aver as follows:

## **INTRODUCTION**

1.        Defendant MATULICH was a director and Chief Executive Officer (CEO) of plaintiffs ACE and GNC. ACE and GNC removed MATULICH from his positions earlier this year, but he has refused to move on, instead engaging in a course of ongoing unauthorized activity, misconduct, and misrepresentation by, among other things, making persistent claims to customers, vendors, and the US Government that he remains the CEO or director, which has caused and continues to cause ACE and GNC immediate and ongoing irreparable harm for which there is no adequate remedy at law other than declaratory and injunctive relief.

2.        Plaintiffs bring this Complaint against Defendant MATULICH seeking (a) a declaration from the court that MATULICH is not the CEO, director, or authorized representative of GNC, having been properly and validly removed by GNC from those capacities, (b) a declaration from the court that MATULICH is not the CEO, director, or authorized representative of ACE, having been properly and validly removed by ACE from those capacities, and (c) injunctive relief including a preliminary injunction, and a permanent injunction, enjoining and restraining MATULICH from:

(a)        interfering with and/or disrupting GNC's and ACE's: (i) business activities and operations, (ii) corporate governance, (iii) vendor relationships, (iv) customer relationships; (v) other contractual relationships, (vi) bank activities and relationships, and (vii) internal GNC and ACE personnel matters;

(b)        accessing, appropriating, keeping, maintaining, using or exploiting GNC's and ACE's (i) confidential information, (ii) trade secrets, (iii) business strategies, and (iv) proprietary information;

(c)        representing to third parties that he is a CEO or director of GNC or ACE, or otherwise authorized to act on behalf of GNC or ACE; and

(d)        disparaging or harming GNC's and ACE's, and their respective directors', managers' and shareholders', (i) business reputation and (ii) good will.

**PARTIES**

3.     Plaintiff GNC is a limited liability company organized and existing under the laws of and is a citizen of Guam, with its principal office and physical address in Guam. GNC's two members are ACE and Teleguam Holdings, LLC dba GTA ("GTA"): ACE is a Guam corporation and GTA is a Delaware limited liability company. ACE is the 51% owner of GNC and GTA owns the remaining 49% of GNC.

4.     Defendant MATULICH is a resident and citizen of California.

**JURISDICTION AND VENUE**

5.     This court has jurisdiction over this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a) for which this court may grant to GNC and ACE declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and FRCP Rule 65. The controversy between GNC and ACE, and MATULICH involves matters including but not limited to the termination of MATULICH as director or CEO or ACE and GNC.

6.     This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The parties are citizens of different states: plaintiffs are citizens of Guam and MATULICH is a citizen of the State of California. The amount in controversy exceeds $75,000.00 calculated on bases including but not limited to:

(a)     the reputational and out-of-pocket damages sustained by GNC and ACE exceed $75,000.00;

(b)     the controversy regarding authority and control over the GNC and ACE entities pertains to companies whose equity, investments, and value exceed $75,000.00;

(c)     the controversy regarding control and authority within ACE of ACE's control, ownership, and authority over its investment in GNC, pertains to an ownership interest and investment amount exceeding $75,000.00;

(d)     the controversy over access to and authority over ACE bank accounts pertains to accounts whose deposits exceed $75,000.00; and

Complaint for Declaratory and Injunctive Relief
*Page* 3 of 15

(e)    the controversy regarding GNC's contracts with third parties pertains to contracts whose values individually and/or collectively exceed $75,000.00.

7.    Venue is proper in this district pursuant to 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

### GNC Removal of MATULICH

8.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 7, as though fully set forth herein.

9.    Plaintiff GNC owns and operates GNC iX, a data center that serves as a major communications connectivity hub of the Asia Pacific region.  GNC iX helps Guam interconnect with the rest of the world.  GNC iX is located in Piti and contains networked computers, storage systems and computing infrastructure to protect the proprietary systems and data of its customers.  GNC iX is a highly secure facility and GNC takes extensive efforts to protect against intrusions or attacks that could compromise customer data. GNC iX has restricted areas where only authorized personnel are allowed, perimeter fencing, and security cameras; and contractors and visitors are not allowed unless requests are made and approved in advance. GNC complies with strict security protocols stipulated by U.S. government agencies and its customers regarding access and operations.

10.    On or about January 3, 2021, as a result of various acts taken by MATULICH that were determined by the remaining board members to be adverse to the interests of GNC and ACE, the boards of ACE and GNC removed MATULICH as the CEO and a director of both companies.

11.    GNC is involved in arbitration in the State of Hawaii in Arbitration No. 21-0272 ("Hawaii Arbitration") over a contractual dispute involving space within the GNC iX with RTI Connectivity Pte. Ltd. ("RTI-C"), a Singapore private limited company in which MATULICH owns and controls a 99% interest.

12. On May 17, 2022, the arbitrators in the Hawaii Arbitration determined that MATULICH's removal on January 3, 2021 as the CEO or director of GNC failed to comply with certain procedural requirements. *See* In re RTI-C v. GNC, Arbitration No. 2100272-A, Final Award on Bifurcated Issue (May 17, 2022). *See* **Exhibit 1**.

13. On May 17, 2022, the same day that the Panel issued its finding, MATULICH emailed GNC's counsel, stating the "Panel's final decision is that I remain the CEO and director of GNC" and that "I was not effectively removed as ACE's CEO." *See* **Exhibit 2**. MATULICH then stated that he was terminating GNC's counsel in the Hawaii Arbitration.

14. On May 21, 2022, MATULICH emailed officers of GTA, informing them of the Hawaii Arbitration order, a "final partial award" that he claimed made him the CEO of GNC and a director of GNC. **Exhibit 3**.

15. Following the Hawaii Arbitration Panel's Final Award on Bifurcated Issue, on May 27, 2022, the GNC Members took the following actions by unanimous consent (the "May 27 Unanimous Members Consent") inter alia: (a) removal of MATULICH as a statutory manager and director of GNC and (b) removal of MATULICH as CEO of GNC. Following the GNC Members' meeting, on May 27, 2022, the GNC Board of Directors took the following actions by unanimous consent (the "May 27 Unanimous Board Consent") inter alia: (a) removal of MATULICH as Chief Executive Officer, (b) ratifying and confirming the removal of MATULICH as a director of GNC and (c) prohibition of bank account access by or becoming an authorized signer by MATULICH on GNC bank accounts. These actions corrected the defects the Hawaii Arbitration Panel identified in the earlier terminations.

16. By letters dated May 27, 2022, GNC notified MATULICH that the GNC Members resolved to remove him from his position as manager and director of GNC by means of the May 27 Unanimous Members Consent, and that the GNC Board of Directors resolved to remove him from his positions as Chief Executive Officer by means of the May 27 Unanimous Board Consent, which together with the May 27

Unanimous Member Consent, effectively removed him from his positions as Chief Executive Officer, manager, and director of GNC as of that date. *See* **Exhibit 4**.

17. On or about June 20, 2022, at a duly noticed Special Board Meeting, the GNC Board of Directors took the following actions by unanimous consent inter alia: (a) ratify and approve of all prior acts of GNC by Brett Lay, Brian Mass, the statutory managers, and any GNC Directors and officers, other than any actions taken by MATULICH since January 3, 2021 and (b) voided all actions taken by MATULICH during the period between May 17, 2022 and June 20, 2022.

18. On July 5, 2022, the GNC Members held a meeting, wherein they took several actions including: (i) ratifying and confirming the removal of, and to the extent not already done, removing Matulich as a statutory manager and a director of GNC; (ii) acknowledging the removal of Matulich as CEO of Member ACE by unanimous written consent of the board of directors of ACE on May 23, 2022, acknowledging the ratification and confirmation of the removal of Matulich as CEO of ACE by unanimous consent at a board of directors meeting of ACE held on June 21, 2022, and acknowledging and confirming the removal of Matulich as CEO of the GNC by unanimous written consent of the Board of Directors of the GNC on May 28, 2022; and (iii) ratifying and approving all prior acts of GNC taken by the Members. To the extent not accomplished by the May 27 Unanimous Consent, these actions corrected the defects the Hawaii Arbitration Panel identified in the earlier terminations.

19. On July 18, 2022, the GNC Directors held a meeting, wherein they took several actions including: (i) acknowledging the removal by the Members of Matulich as a statutory manager and a director of GNC by unanimous written consent of the members on May 28, 2022, and acknowledging the ratification and confirmation of the removal by the members of Matulich as a statutory manager and a director of GNC by unanimous consent of the members at a meeting held on July 5, 2022; (ii) acknowledging the removal of Matulich as CEO of Member ACE by unanimous written consent of the board of directors of ACE on May 23, 2022, acknowledging the ratification and confirmation of the removal of Matulich as CEO of Member

ACE by unanimous consent of the board of directors of ACE at a meeting held on June 21, 2022, ratifying and confirming the removal of Matulich as CEO of GNC, and if and to the extent not already done, removing Matulich as the CEO of GNC; (iii) ratifying and approving of all prior acts of GNC taken by Brett Larry Lay, Brian Scott Mass, the statutory managers, and any of GNC's directors and officers, other than any actions taken by Matulich, since January 3, 2021; and (iv) voiding all actions purportedly taken by Matulich as alleged CEO of GNC during the period between May 17, 2022 and July 18, 2022. To the extent not accomplished by the May 27 Unanimous Consent, these actions corrected the defects the Hawaii Arbitration Panel identified in the earlier terminations.

## ACE Removal of MATULICH

20.     On or about January 23, 2019, ACE duly incorporated under the laws of Guam as a Guam corporation. (Incorporation Certificate, January 23, 2019).

21.     Pursuant to its Articles of Incorporation filed at the Guam Department of Revenue and Taxation ("DRT") on January 23, 2019, and the Second Amended and Restated Articles of Incorporation filed at DRT on December 2, 2019, the initial board of directors consisted of (a) MATULICH, (b) Brett Lay, and (c) Brian Mass. (Articles, Article Seven (b)).

22.     Pursuant to a Waiver of Notice and Consent to Holding of First Meeting of the Sole Shareholder of ACE dated January 13, 2019, MATULICH elected himself as the ACE CEO.

23.     Following the Hawaii Arbitration Panel's Final Award on Bifurcated Issue, on May 23, 2022, the ACE Board of Directors took the following actions by unanimous consent (the "May 23 Unanimous Consent") inter alia: (a) removed MATULICH as Chief Executive Officer of ACE, (b) removed MATULICH as a director of ACE, (c) prohibited bank account access by or becoming an authorized signer by MATULICH on ACE bank accounts, and (d) ratified and approved all acts of ACE taken by Brett Lay, Brian Mass, and any of ACE's directors and officers, other than any actions taken by MATULICH, since January 3, 2021. These actions corrected the defects the Hawaii Arbitration Panel identified in the earlier terminations.

24.     By letter dated May 23, 2022, ACE notified MATULICH that the ACE Board of Directors resolved to remove him from his position as Chief Executive Officer of ACE by means of the May 23 Unanimous Consent, which effectively removed him from his position as Chief Executive Officer of ACE as of that date. *See* **Exhibit 5**.

25.     On or about June 21, 2022, at a duly noticed Special Board Meeting, the ACE Board of Directors took the following actions by unanimous consent inter alia: (a) ratified and confirmed the removal of, and to the extent not already done, removed MATULICH as Chief Executive Officer and director of ACE, (b) ratified and confirmed the prohibition of, and to the extent not already done, prohibited, bank account access by or becoming an authorized signatory by MATULICH on ACE's bank accounts, and (c) voided all actions taken by MATULICH during the period between May 17, 2022 and June 21, 2022.  To the extent not accomplished by the May 23 Unanimous Consent, these actions corrected the defects the Hawaii Arbitration Panel identified in the earlier terminations.

**MATULICH Purports to Act on Behalf of ACE and GNC**

26.     Despite the removal by ACE and GNC of MATULICH as CEO, director, or authorized representative, MATULICH has engaged and continues to engage in a course of ongoing unauthorized activity, misconduct, and misrepresentation regarding his removal from ACE and GNC. The below-described events are a few examples of MATULICH's wrongful conducted directed at ACE and GNC.

27.     Notwithstanding notification of his termination, MATULICH has communicated, and continues to communicate, with ACE and GNC employees representing that he is the CEO, manager, or director of ACE and/or GNC. Among other things, MATULICH has insisted to GNC employees that he have free access to GNC iX. For example, on August 8, 2022, MATULICH sent correspondence to GTA and GNC claiming "I was CEO of GNC and I am CEO of GNC." MATULICH threatened the following: "As GNC's CEO, I am reminding you that any failure to allow Customary Access to our GNC facility, as if

it was prior to 31 December 2020, violates the Confirmed/Enlighted Federal Order dated 28 July 2022. We will pursue it as a crime." *See* **Exhibit 6**.

28.     Notwithstanding notification of his termination, MATULICH has attempted to appropriate ACE funds by misrepresenting his position to First Republic Bank, thereby obtaining signatory authority over ACE's accounts. On or about August 10, 2022, MATULICH presented the Hawaii Arbitration Award to First Republic Bank in Napa, California, where ACE owns bank accounts, and represented that he remains the CEO of ACE, in an attempt to convince First Republic Bank to add him back as an authorized signer for the ACE accounts at the bank. *See* **Exhibit 7**.

29.     Notwithstanding notification of his termination, MATULICH has communicated, and continues to communicate, with ACE and GNC vendors representing that he is the CEO, manager, or director of ACE and/or GNC. For example, on or about July 15, 2022, MATULICH wrote a letter to In Hui Yu-Healy, President of California Pacific Technical Services, LLC ("CalPac"). *See* **Exhibit 8**. CalPac supplies and installs fiber optic cable for GNC iX and is a critical vendor of GNC. MATULICH informed Ms. Yu-Healy that he remained CEO of GNC and he demanded to review all CalPac contracts related to GNC so that he could decide whether such contracts are "void" unless they had his "explicit approval." MATULICH's letter caused great concern to Ms. Yu-Healy, who wrote to GNC and asked, "Is there a possibility for this work or PO to be cancelled?" *See* **Exhibit 9**. At the time, GNC's contracts with CalPac required provision of services valued above $650,000.00.

30.     As another example, on May 28, 2022 by representing he was the CEO of GNC and had authority to do so, MATULICH caused an outside vendor to enter GNC iX under false pretenses and attempted to have the vendor install undocumented and unauthorized power connections to RTI-C cabinets in order to obtain additional power for RTI-C that could allow new and additional services to be sold to RTI-C's customers. MATULICH's actions constituted a serious breach of security, criminal trespass, and attempt to misappropriate GNC's property for his own gain and benefit.

31.     Notwithstanding notification of his termination, and perhaps most outrageously, MATULICH purported to fire his opposing counsel in the Hawaii Arbitration by claiming authority as CEO of GNC to do so. During the pendency of the Hawaii Arbitration, despite being adverse to GNC, MATULICH attempted to correspond with GNC's lawyers to direct GNC's litigation strategy and to demand access to documents and information protected by the attorney-client privilege belonging to GNC. On August 4, 2022, after GNC's lawyers declined to engage, MATULICH sent correspondence purporting to terminate their representation of GNC, which, in theory, would have left GNC without representation during a legal proceeding initiated by MATULICH against GNC. *See* **Exhibit 10**.

32.     Notwithstanding notification of his termination, MATULICH has attempted to interfere in the corporate governance of GNC and ACE. On August 8, 2022, MATULICH issued a letter identifying himself as ACE's CEO and chairman "controlling 51% of the membership interest of GNC", and purportedly calling for and noticing an August 19, 2022 meeting of GNC members to remove statutory managers of GNC, replace them with MATULICH'S nominees, and cancel certain GNC Member resolutions, minutes and actions. *See* **Exhibit 11.** On August 22, 2022, MATULICH purporting to be the Chairman and CEO of ACE and GNC, sent correspondence to Brian Mass and Brett Lay claiming "A Special Meeting of the Members was held on 19 August 2022 where you were removed as an Asia Connectivity Element, Inc. ("ACE") appointed manager and/or director of Gateway Network Connections LLC. ("GNC")." *See* **Exhibit 12.**

33.     Notwithstanding notification of his termination, upon information and belief, MATULICH has communicated, and continues to communicate, with third parties presenting himself as CEO of Ace and GNC. For example, as recently as September 3, 2022, MATULICH notified ACE, GNC, and various third parties that "I remain CEO of ACE and GNC." *See* **Exhibit 13**.

34.     Upon information and belief, notwithstanding notification of his termination, MATULICH has communicated, and continues to communicate, with representatives of the US Government representing that he is the CEO, manager, or director of ACE and/or GNC.

35.     Upon information and belief, notwithstanding notification of his termination, MATULICH has communicated, and continues to communicate, with ACE and GNC customers representing that he is the CEO, manager, or director of ACE and/or GNC.

36.     GNC does not consent to any conduct of MATULICH in holding himself out as acting with any apparent or ostensible authority of GNC from May 27, 2022 and onwards.

37.     ACE does not consent to any conduct of MATULICH in holding himself out as acting with any apparent or ostensible authority of ACE from May 23, 2022 and onwards.

38.     MATULICH's wrongful conduct has caused, and if not enjoined and restrained, will continue to cause GNC and ACE irreparable harm for which there is no adequate remedy at law, including but not limited to, harm resulting from MATULICH:  (a) interfering with and/or disrupting GNC's and ACE's: (i) business activities and operations, (ii) corporate governance, (iii) vendor relationships, (iv) customer relationships; (v) other contractual relationships, (vi) bank activities and relationships, and (vii) internal GNC and ACE personnel matters; (b) accessing, appropriating, keeping, maintaining, using or exploiting GNC's and ACE's (i) confidential information, (ii) trade secrets, (iii) business strategies, and (iv) proprietary information; (c) representing to third parties that he is a CEO or director of GNC or ACE, or otherwise authorized to act on behalf of GNC or ACE; and (d) disparaging or harming GNC's and ACE's, and their respective directors', managers' and shareholders', (i) business reputation and (ii) good will.

## FIRST CAUSE OF ACTION

## DECLARATORY RELIEF

39.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 38, as though fully set forth herein.

40.    MATULICH has repeatedly claimed that he is the Chief Executive Officer, manager, or director of GNC and ACE, after he was notified that both GNC and ACE had taken actions to remove him from these positions in May 2022.

41.    Any authority of MATULICH to act for or on behalf of GNC was terminated on May 27, 2022 or at the latest, July 18, 2022.

42.    Any authority of MATULICH to act for or on behalf of ACE was terminated on May 23, 2022 or at the latest, June 21, 2022.

43.    Following notice that GNC renounced any authority of MATULICH to act on behalf of GNC, MATULICH has continued to hold himself out as the Chief Executive Officer, Manager, and Director of GNC.

44.    Following notice that ACE renounced any authority of MATULICH to act on behalf of ACE, MATULICH has continued to hold himself out as the Chief Executive Officer, Manager, and Director of ACE.

45.    MATULICH's actions have created a dispute about his status as a Chief Executive Officer, manager, or director of GNC and ACE, following his removal, as well as his authority to act on or behalf of GNC and ACE.  In light of the parties' conflicting positions, an actual and justiciable controversy exists over the parties' respective rights and obligations.

46.    GNC is entitled to declaratory relief that as of May 27, 2022, or at the latest, July 18, 2022, GNC effectively and validly removed MATULICH as a Chief Executive Officer, manager, and director of

GNC and that any actions taken by MATULICH purportedly on behalf of GNC between May 23, 2022 and the date he was subsequently terminated are void.

47.     ACE is entitled to a declaration that as of May 23, 2022, or at the latest, June 21, 2022, ACE effectively and validly removed MATULICH as ACE CEO and director and that any actions taken by MATULICH purportedly on behalf of ACE between May 23, 2022 and the date he was subsequently terminated are void.

## SECOND CAUSE OF ACTION

## INJUNCTIVE RELIEF

48.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 47, as though fully set forth herein.

49.     MATULICH'S unauthorized activity, misconduct and misrepresentation has caused, and if not enjoined and restrained, will continue to cause GNC and ACE irreparable harm and injury for which there is no adequate remedy at law.

50.     GNC is entitled to injunctive relief, including preliminary injunction and permanent injunction against MATULICH.

51.     ACE is entitled to injunctive relief, including preliminary injunction and permanent injunction against MATULICH.

## PRAYER FOR RELIEF

WHEREFORE, GNC and ACE respectfully request that this court:

1.     Issue a declaratory judgment that as of May 23, 2022, or at the latest, June 21, 2022, ACE effectively and validly removed MATULICH as ACE CEO, director, and authorized representative and that all actions taken by MATULICH purportedly on behalf of ACE between May 23, 2022 and the date of termination are void;

2.      Issue a declaratory judgment that as of May 27, 2022, or at the latest, July 18, 2022, GNC effectively and validly removed MATULICH as ACE CEO, director, and authorized representative and that all actions taken by MATULICH purportedly on behalf of ACE between May 23, 2022 and the date of termination are void;

3.      Issue a preliminary injunction enjoining and restraining MATULICH from: (a) interfering with and/or disrupting GNC's and ACE's: (i) business activities and operations, (ii) corporate governance, (iii) vendor relationships, (iv) customer relationships; (v) other contractual relationships, (vi) bank activities and relationships,  and (vii) internal GNC and ACE  personnel matters; (b) accessing, appropriating, keeping, maintaining, using or exploiting GNC's and ACE's (i) confidential information, (ii) trade secrets, (iii) business strategies, and (iv) proprietary information; (c) representing to third parties that he is a CEO or director of GNC or ACE, or otherwise authorized to act on behalf of GNC or ACE; and (d) disparaging or harming GNC's and ACE's, and their respective directors', managers' and shareholders', (i) business reputation and (ii) good will.

3.      Issue a permanent injunction enjoining and restraining MATULICH from (a) interfering with and/or disrupting GNC's and ACE's: (i) business activities and operations, (ii) corporate governance, (iii) vendor relationships, (iv) customer relationships; (v) other contractual relationships, (vi) bank activities and relationships,  and (vii) internal GNC and ACE  personnel matters; (b) accessing, appropriating, keeping, maintaining, using or exploiting GNC's and ACE's (i) confidential information, (ii) trade secrets, (iii) business strategies, and (iv) proprietary information; (c) representing to third parties that he is a CEO or director of GNC or ACE, or otherwise authorized to act on behalf of GNC or ACE; and (d) disparaging or harming GNC's and ACE's, and their respective directors', managers' and shareholders', (i) business reputation and (ii) good will.

4.      Award such costs, expenses, and fees available under applicable law; and

5.      Award such other relief as the court deems just and proper.

Respectfully submitted this 7th of October 2022.

| | |
|---|---|
| **LAW OFFICE OF**<br>**JACQUELINE TAITANO TERLAJE, P.C.** | **LAW OFFICE OF**<br>**PETER C. PEREZ** |
| By: /s/ | By: /s/ |
| **JACQUELINE TAITANO TERLAJE**<br>Attorney for<br>    Gateway Network Connections, LLC. | **PETER C. PEREZ**<br>Attorney for<br>    Asia Connectivity Elements, Inc. |

**VERIFICATION**

    **BRETT LARRY LAY** declares and states that his is the authorized representative and Chief Executive Officer of Asia Connectivity Elements, Inc. and Gateway Network Connections, the Petitioner in the foregoing Complaint for Declaratory Relief; that he has read the Complaint herein, knows the contents thereof to be true and correct, except as to the matters which may have been stated upon his information and belief; and as to those matters, he believes them to be true.

    I declare under penalty of perjury of the laws of Guam and the United States that the foregoing is true and correct to the best of my knowledge.

    Executed on this 7 day of October, 2022.

**BRETT LARRY LAY**

DISPUTE PREVENTION AND RESOLUTION, INC.

HONOLULU, HAWAII

| | |
|---|---|
| RTI CONNECTIVITY PTE. LTD.; RUSSELL MATULICH,<br><br>    Claimants,<br><br>  v.<br><br>GATEWAY NETWORK CONNECTIONS, LLC,<br><br>    Respondent.<br><br>GATEWAY NETWORK CONNECTIONS, LLC,<br><br>    Counterclaimant,<br><br>  v.<br><br>RTI CONNECTIVITY PTE. LTD.,<br><br>    Counter-Respondent. | ARBITRATION NO. 21-0272-A<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW AND FINAL AWARD ON BIFURCATED ISSUE OF WHETHER CLAIMANT RUSSELL MATULICH WAS EFFECTIVELY REMOVED AS THE CEO AND DIRECTOR OF RESPONDENT GATEWAY NETWORK CONNECTIONS, LLC<br><br>Arbitration Panel:<br><br>Mark D. Bernstein, Esq.<br>E. John McConnell, Judge (Ret.)<br>Marie N. Milks, Judge (Ret.)<br><br>Hearing Dates: March 30-31, 2022 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW AND FINAL AWARD ON BIFURCATED ISSUE OF WHETHER CLAIMANT RUSSELL MATULICH WAS EFFECTIVELY REMOVED AS THE CEO AND DIRECTOR OF RESPONDENT GATEWAY NETWORK CONNECTIONS, LLC**

I. **INTRODUCTION**

By order dated October 17, 2021, this Arbitration was bifurcated, with the first phase consisting of the issue of whether Claimant Russell Matulich ("Matulich") was, or was not, effectively removed from his positions as chief executive officer (CEO) and director of Respondent Gateway Network Connections, LLC ("GNC"). Hereafter, this issue will be referred to as the

"Bifurcated Issue." The hearing on the Bifurcated Issue was held on March 30 and 31, 2022.

Claimants Matulich and RTI Connectivity Pte Ltd. ("RTI-C") were represented by Leroy Colombe, Esq. of Chun Kerr LLP; Chase Tajima, Esq. of Crockett & Associates; (Mr. Tajima is now with the law firm Trepanier Tajima), and Jonathan Jenkins, Esq. of Jenkins Kayayan LLP. Respondent and Counterclaimant GNC was represented by Ronald Heller, Esq. and Andrew Chianese, Esq. of Torkildson Katz Hetherington Harris & Knorek.

Claimants called as witnesses Matulich and Masahiro Soma. Respondent called as witnesses Brett Lay, Brian Mass, Daniel Mendiola, and Donald Calvo, Esq. In addition to live testimony, the parties submitted deposition transcripts of Brett Lay, Roland Certeza, Grace Guang, Esq., and David Yuile, including designations and counter-designations of the testimony therein contained. All Joint, Claimant, and Respondent exhibits submitted to the Panel were received into evidence. The parties each submitted written arbitration briefs setting forth their legal arguments. The hearing was stenographically recorded.

On April 28, 2022, the parties submitted proposed Findings of Fact and Conclusions of Law, each of which contained numerous findings and conclusions that may be relevant to one or more claims asserted in this arbitration, but not necessarily to the disposition of the Bifurcated Issue. The Panel has determined that including any findings or conclusions that are not directly relevant to the disposition of the Bifurcated Issue would be confusing and therefore such findings and conclusions will not be included.

The Panel sees no purpose in segregating factual findings and legal conclusions in separate sections hereof. Therefore, factual findings and related legal conclusions are combined.

The undersigned three members of the Panel, having considered the evidence presented, the arguments of counsel, and a review of the record, now make the following Findings of Fact and Conclusions of Law which shall serve as the factual and legal basis for the Panel's Final Award on the Bifurcated Issue and its Partial Final Award in this arbitration.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Summary of the Parties' Position on Bifurcated Issue

The essence of the dispute on the Bifurcated Issue is GNC claims that Asia Connectivity Elements, Inc. (ACE), one of two members of GNC, is authorized to unilaterally remove certain officers and directors of GNC (including Matulich) without the necessity of a meeting of the members or the board of directors of GNC while RTI-C and Matulich assert that Matulich's removal required the unanimous approval of the GNC board of directors.

### B. Arbitrability

1. GNC claims it never agreed to arbitrate the Bifurcated Issue. However, on or about April 5, 2021, GNC and RTI-C executed an agreement to arbitrate in the form of a stipulation wherein the Parties and ACE, through their counsel agreed as follows:

> WHEREAS the Thirteenth Cause of Action in the Complaint is styled as a petition to compel arbitration and is asserted on behalf of defendants RTI CONNECTIVITY, PTE. LTD., AND RUSSEL(sic) MATULICH against defendant GATEWAY NETWORK

- 3 -

CONNECTIONS, LLC, and arises out of various contracts involving these entities requiring arbitration of claims thereunder;

WHEREAS, GATEWAY NETWORK CONNECTIONS, LLC., does not oppose and consents to participate in arbitration;

IT IS HEREBY AGREED THAT:

1. Causes of Action ELEVEN, TWELVE and THIRTEEN of the Complaint, to the extent asserted by RTI CONNECTIVITY, PTE. LTD., and/or RUSSEL(sic) MATULICH, against GATEWAY NETWORK CONNECTIONS, LLC, are hereby stayed pending the arbitration of those claims pursuant to the relevant arbitration agreements.

(See Exhibit J-058)

2. The issues referred to in the above-mentioned agreement included the Bifurcated Issue of whether Matulich was effectively removed as an officer and director of GNC. Additionally, and as will hereafter be detailed, certain provisions of the GNC Operating Agreement and the Joint Venture Agreement pursuant to which GNC was created raise the issue of whether ACE effectively removed Matulich as the CEO of ACE (See generally, Exhibit J-005 the Joint Venture Agreement and Exhibit J-006 the GNC Operating Agreement).

3. In addition, GNC's counterclaim seeking enforcement of the parties' Master Services Agreement (MSA) and its motion seeking summary judgment on the Bifurcated Issue support the determination that the Parties agreed to arbitrate claims that included the Bifurcated Issue. Therefore, the Panel concludes that the Bifurcated Issue is arbitrable and thus the Panel has jurisdiction to rule thereon.

- 4 -

## C. The Bifurcated Issue

### General

1. Claimant RTI CONNECTIVITY PTE. LTD. ("RTI-C") is a Singapore private limited company with its principal place of business in Singapore. (Affirmatively asserted by Claimants in the Demand For Arbitration ("Demand"), Exhibit R-1, and undisputed.)

2. Claimant RUSSELL MATULICH ("Matulich") is an individual residing in Napa, California. (Demand, Exhibit R-1; undisputed.)

3. Respondent/Counterclaimant GATEWAY NETWORK CONNECTIONS, LLC ("GNC") is a limited liability company organized on or about June 20, 2019, under the *Guam Limited Liability Company Act* 18 GCA Business Structure & Function Ch. 15 Limited Liability Companies (hereafter the "ACT") with its principal place of business in Guam. (Demand, Exhibit R-1; undisputed and Exhibit J-113 Articles of Organization of Gateway Network Connections, LLC).

4. GNC was created pursuant to a Joint Venture Agreement between Asia Connectivity Elements, Inc. ("ACE") and TeleGuam Holdings, LLC ("GTA") (See Exhibit J-005 Joint Venture Agreement at Article 2, hereafter the "JVA". GNC is owned by its two members, ACE which owns 51% of GNC, and GTA, which owns the remaining 49%. (Demand, Exhibit R-1; undisputed). At or near the same time the members entered into an Operating Agreement for GNC (See Exhibit J-006).

5.      GNC was formed for the purpose of constructing, owning, and operating the GNC data center and cable landing station located in Piti, Guam. (JVA, Ex. J-005, at Article 2, §2.4.)

6.      On January 23, 2019, the Articles of Incorporation of ACE were filed with Guam's General Licensing and Registration Branch, registering ACE as a corporation under and in accordance with the laws of Guam.  (ACE Articles, Ex. J-014.)  The Articles listed Matulich as the incorporator.  The Bylaws of ACE were also filed with Guam's General Licensing and Registration Branch on January 23, 2019.  (ACE Bylaws, Ex. J-013).  ACE was formed for the specific purpose of being one of the two members of GNC.  (Testimony of Russell Matulich, Transcript of Video Conference Arbitration on March 30-31, 2022, Volume I, page 58 at lines 4-6.)[1]

7.      As of 2019, Teleguam Holdings, LLC, known as GTA, was an existing Guam entity with experience doing business in Guam.  (Matulich – Trans. Vol. I, p. 61 lines 6-18.)

**Relevant Provisions of the ACT, GNC Articles of Organization, and Operating Agreement**

8.      GNC's Articles of Organization and Operating Agreement provided that GNC would not be managed by its Members, but instead by a board of directors (hereafter, "GNC's Board") which would have the exclusive right and power to manage GNC and appoint and approve GNC's officers. See Exhibit J-

---

[1]  Hereinafter, references to testimony at the March 30-31 Arbitration hearing will be in the condensed format "Matulich – Trans. Vol. I,  p. 58 lines 4-6."

113, GNC Articles of Organization at Article 9, and Articles 5.1 and 5.2 of the GNC Operating Agreement, Exhibit J-006.

9.     GNC's Operating Agreement also established the titles, qualifications of the GNC Board and GNC's officers (Exhibit J-006-Articles 5.1 and 5.2 of GNC Operating Agreement), as set forth below:

> 5.1 <u>Management of the Company by the Board of Directors</u> The Business, property and affairs of the Company shall be **managed exclusively by the Directors**. Except for situations in which the approval of the Members is expressly required by the Joint Venture Agreement, the Articles, or this Agreement, the **Directors shall have full, complete and exclusive authority, power and discretion to manage and control the Business**, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's Business, property and affairs. (Emphasis Supplied)

> (a) <u>Board of Directors.</u> **The Company shall be administered and managed by the Board of Directors** which shall consist of five (5) directors . **For so long as both ACE and GTA are Members, three (3) Directors shall be appointed by ACE and two (2) Directors shall be appointed by GTA. Each Member shall secure that the Directors are elected, removed, or replaced, as applicable, as may be required from time to time to reflect the composition of the Board of Directors as set forth above.** Two of the three Directors appointed by ACE shall serve as the Chairman of the Board of Directors and a key operating executive of the Company, respectively. Notwithstanding the foregoing, in the event that the Percentage Interest in the Company held by GTA and its Affiliates is greater than the Percentage Interest in the Company held by ACE and its Affiliates, then three (3) Directors shall be appointed by GTA and two (2) Directors shall be appointed by ACE, and two of the three Directors appointed by GTA shall serve as the Chairman of the Board of Directors and a key operating executive of the Company, respectively. The initial Directors of the Company shall be: Russell Alan Matulich (Chairman), Brian Scott Mass, Roland Certeza and David Chase.... (Emphasis Supplied)

> Article 5.1(e) sets the voting requirements of certain actions of the GNC Board

(e) Voting. Except as otherwise provided in this Agreement or unless otherwise provided by applicable laws, the resolution of the Board of Directors at any meeting of the Board of Directors shall be adopted by an affirmative vote of a majority of the Directors represented at such meeting at which a quorum is present; provided, however, that the following matters shall be adopted or approved by the Board of Directors only with the unanimous votes of all the Directors: ...

(xxiii) The termination or removal of any manager as approved by the Members to handle and oversee the day-to-day operations of the company."

5.2 Officers. **The Board of Directors shall have the right to appoint and approve the officers of the Company.** For so long as ACE and GTA are Members of the Company and ACE holds a greater Percentage Interest in the Company than GTA, the officers of the Company shall be as follows: ACE's Chief Executive Officer shall serve as the Company's Chief Executive Officer, ACE's Chief Financial Officer shall serve as the Company's Chief Financial Officer and Secretary, GTA's Chief Executive Officer shall serve as Chief Operating Officer and GTA's Chief Technology Officer shall serve as the Company's Chief Technology Officer. The officers of the Company shall have the rights and responsibilities set forth in this Agreement of the Company and shall be in charge of the administration of all the daily business affairs of the Company as set forth therein and in accordance with the polices established by the Board of Directors. (Emphasis Supplied)

10.    Relevant to the disposition of the Bifurcated Issue, are the

following provisions of the ACT which govern GNC:

**§ 15115 (B). Management by Non-members.**

(a) The articles of organization may provide that the business and affairs of the limited liability company shall be managed by or under the authority of one or more managers who may, but need not, be members.

(b) If the limited liability company is to be managed by one or more managers and not by all its members, the articles of organization shall contain a statement to that effect. But if management is vested in only one manager, the articles of organization shall so state.

(c) The articles of organization or operating agreement may prescribe the number and qualifications of managers who may, but need not, be natural persons.

- 8 -

## § 15115 (C). Management Vested in Manager Pursuant to Articles of Organization; Election; Removal; Resignation.

If management of the limited liability company is vested in one or more managers pursuant to a statement in the articles of organization:

**(a)  Election of managers to fill initial positions or vacancies shall be by the affirmative vote of a majority in interest of the members.**

**(b)  Any or all managers may be removed, with or without cause, by the vote of a majority in interest of the members at a meeting called expressly for that purpose. Any removal shall be without prejudice to the rights, if any, of the manager under any contract of employment.**

(c)   Any manager may resign as a manager at any time upon written notice to the limited liability company, without prejudice to the rights, if any, of the limited liability company under any contract to which the manager is a party.

(d)   Unless they have earlier resigned or been removed, managers shall hold office until the expiration of the term for which they were elected or, if no term was provided, until their successors have been elected and qualified. (Emphasis Supplied)

## § 15115 (E). Appointment of Officers; Authority of Signing Officers in Documents.

(a) A written operating agreement may provide for the appointment of officers, including, without limitation, a chairperson, or a president, or both, a secretary, a chief financial officer, and any other officers with such titles, powers, and duties as shall be specified in the articles of organization or operating agreement, or determined by the managers or members. An officer may, but need not, be a member or manager of the limited liability company, and any number of offices may be held by the same person.

(b) Officers, if any, shall be appointed in accordance with the written operating agreement or, if no such provision is made in the operating agreement, any officers shall be appointed by the managers and shall serve at the pleasure of the managers, subject to the rights, if any, of an officer under any contract of employment. Any officer may resign at any time upon written notice to the limited liability company without prejudice to the rights, if any, of the limited liability company under any contract to which the officer is a party.

- 9 -

**§ 15115 (G). More than one Manager; Decisions by Majority Vote.**

Except as otherwise provided in the articles of organization or the operating agreement, if the members have appointed more than one manager, decisions of the managers shall be made by majority vote of the managers if at a meeting, or by unanimous written consent.

11.     Because the qualification for holding the position of CEO at GNC was being the CEO of ACE, the Bylaws of ACE related to the appointment and removal of the CEO of ACE and the meeting of ACE directors in general are relevant. Article III Section 9 of the ACE Bylaws (Exhibit J-013) provides as follows:

Section 9.     SPECIAL MEETINGS—NOTICES

Special meetings of the board of directors for any purpose or purposes shall be called at any time by the president or if the president is absent or unable or refuses to act, by any vice president or by any two directors.

**Removal of Matulich as CEO of GNC**

12.     Article V of the GNC Operating Agreement establishes neither a term of office for GNC's executive officers nor a procedure for the removal of existing officers. However, §15115(E)(b) of the ACT provides that "any officers serve at the pleasure of the managers…".

13.     Neither GNC's Articles of Organization nor its Operating Agreement establish the position of "Manager." However, the ACT makes it clear that a limited liability company is managed either by its members or by managers if the Articles so provide. Here, the Articles provide that persons other than the members will manage GNC (the GNC Board) and Article 4.8 of the GNC Operating Agreement provides that **the Members of GNC are not managers**.

- 10 -

14.    Based on the GNC Operating Agreement and the ACT, the Panel concludes that the Directors of GNC are all managers of GNC within the meaning of the ACT and therefore the only Managers which the officers serve at the pleasure of are the directors of GNC.

15.    The directors of GNC did not hold a Board of Director's Meeting where the directors removed Matulich as the CEO of GNC.  Matulich-Trans. Vol. I, p. 141:19-142:2; Lay Depo. 21:21-22:13; Certeza Depo. 30:1-31:3; 36:17-25; 39:8-23; Chase Depo. 15:6-14, 18:16-19:2, 31:1-6, 31:19-32:3.

16.    Despite the absence of any GNC Board meeting wherein Matulich was removed as GNC's CEO, GNC asserts that Section 5.2 vests ACE with the authority to unilaterally remove the CEO of GNC by removing the CEO of ACE. GNC's bases this assertion on Article 5.2 of the GNC Operating Agreement which states in pertinent part that "…*For so long as ACE and GTA are Members of the Company and ACE holds a greater Percentage Interest in the Company than GTA,* **the officers of the Company shall be as follows: ACE's Chief Executive Officer shall serve as the Company's Chief Executive Officer….**"

17.    GNC's assertion first requires a determination of whether ACE effectively removed Matulich as its CEO, which GNC claims ACE did at a validly held special meeting of the ACE Board on January 3, 2021.  If ACE did so, then Matulich is no longer qualified to hold the CEO position at GNC.

18.    The subject special meeting was called on January 1, 2021, when David Yuile wrote to Brian Mass expressing his desire to call a meeting of the board of directors of ACE.  Mass responded that "Per the Bylaws, a special board meeting may be called by two directors, and I am in agreement as well to

call the board meeting for ACE. I will arrange the board meeting for Sunday evening US PST." (See Exhibit J-036). At the time of this e-mail, the directors of ACE were David Yuile, Brett Lay, Brian Mass and Russell Matulich and the President of ACE was Brett Lay who was in Hawaii. (See Exhibit J-40- ACE Board Meeting Minutes January 3, 2021, see also Lay -Trans. Vol. II p. 229).

19.    The original Articles and Bylaws of ACE state that the place of business of the corporation was 268 Bush Street #77, San Francisco, CA 94104. See Ex. J-013 and J-014. That address is a mailbox at a UPS store in San Francisco; it is only a place to receive mail, without any space for actual meetings to be held. No ACE board meetings were ever held in person at the designated corporate office – all actions of the ACE board were always handled by electronic communications. (Matulich – Trans. Vol. I, p. 54, lines 4-10; Mass – Trans. Vol. II, p. 302, lines 2-13.)

20.    No evidence was submitted that Mr. Lay refused to call the special meeting of the ACE directors, or that Mr. Lay was unable to do so. Given that ACE had no actual corporate office, Mr. Lay was not absent. Mr. Lay did not call the special board meeting of ACE as required by ACE's Bylaws because of a matter of personal convenience. See Lay- Trans. Vol II, p. 243. ("It was, you have to remember it was New Year's Day or whatever. I had an entire house full of people at my house. I asked them if they could go ahead and do that for me.")

21.    The Panel concludes that the ACE special meeting of the ACE Board of Directors held on January 3, 2021, was not called in accordance with the Bylaws of ACE and that therefore, the actions taken at said meeting are

void *ab initio.* Actions taken at board meeting with improper notice are void ab initio. *Moore Bus. Forms v. Cordant Holdings Corp., Civil Action No. 13911, 1998 Del. Ch. LEXIS 25, at \*28 (Ch. Feb. 4, 1998).* "In the absence of proper notice, any action of the Board is invalid unless later ratified by the absent directors and thus waived by them." *Valerino v. Little, 62 Md. App. 588, 598 (1985). see also Ming Tung v. China Buddhist Ass'n, 124 A.D.3d 13, 29 (N.Y. App. Div. 2014)* "It should be apparent that if the meeting was called in violation of the association's bylaws, it simply does not matter whether proper notice was given."

22.    Therefore, Matulich remains qualified to hold the position of CEO of GNC because he was never effectively removed as the CEO of ACE.

23.    GNC's assertion also requires the analysis of its contention that ACE can unilaterally remove Matulich as the CEO of GNC by simply removing him as the CEO of ACE.  Article 5.2 of the GNC Operating Agreement addresses only the qualifications of the persons who are to hold the executive officer positions at GNC.  It does not state a term for any of the officers nor does it state how these officers are to be removed or how a vacancy in any office is to be filled.

24.    Therefore, the Panel must rely on the provisions of the ACT which state that the CEO serves at the pleasure of the Managers who in this case are the GNC Board.  Accordingly, the Panel concludes that only the GNC Board may remove any of the officers of GNC.

25.    Because Matulich was never removed as the CEO of GNC by the only body with the authority to do so under the GNC Operating Agreement ,

- 13 -

Matulich has not been removed as the CEO of GNC and remains the CEO of GNC.

**Matulich's Removal as Director of GNC**

26.    Neither the JVA nor the GNC Operating Agreement specifically provide that a director of GNC may be automatically removed as a director by the unilateral act of one of the Members.

27.    GNC's argument that Article 5.1(a) of the GNC Operating Agreement supports the right of a member to unilaterally remove a director of GNC is without merit, for Article 5.1(a) does not so provide. Instead, it requires that "Each Member shall secure that the Directors are elected, removed or replaced, as applicable, as may be required from time to time **to reflect the composition of the Board of Directors as set forth above,**" which the GNC Operating Agreement established as 3 directors for ACE and 2 directors for GTA.

28.    The GNC Operating Agreement does not address how GNC's Members are to effectuate the election and removal of managers such as the GNC Directors. However, §15115 (C)(b) of the ACT does and it provides in pertinent part that: ***"Any or all managers may be removed, with or without cause, by the vote of a majority in interest of the members at a meeting called expressly for that purpose."***

29.    No evidence of a meeting of the Members of GNC being held for the purpose of removing Matulich as a manager of GNC was ever submitted nor was any evidence of an executed unanimous consent of the Members for that purpose. Therefore, the Panel concludes that Matulich was not effectively

- 14 -

removed as a director of GNC, because no Director of GNC may be effectively removed without either a written unanimous consent of all of the Members of GNC or a vote of a majority in interest of the members at a meeting called expressly for that purpose.

## III.   SUMMARY AND DECISION

Based on the foregoing, the Panel hereby rules on the Bifurcated Issue as follows:

1.      Matulich was not effectively removed as the CEO of GNC and therefore remains the CEO of GNC.

2.      Matulich was not effectively removed as a director of the CEO of GNC and therefore remains a director of GNC.

3.      Because Matulich was not effectively removed as the CEO of ACE, he continues to be qualified to hold the position of CEO of GNC.

4.      This ruling is a final ruling on the Bifurcated Issue and constitutes a final partial award in this arbitration which shall be deemed established in any further proceedings on the remaining claims in this arbitration.

5.      This order may be executed electronically and/or executed in counterparts and transmitted electronically.  All electronically executed or transmitted signatures shall be treated as original signatures for all purposes.


[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

IT IS SO ORDERED


Dated May 17, 2022, at Honolulu, Hawaii


*Mark D. Bernstein*

_____
Mark D. Bernstein, Arbitration
Panel Chair


*E. John McConnell*

_____
E. John McConnell, Judge (Ret.)


*Marie N. Milks*

_____
Marie N. Milks, Judge (Ret.)


FINDINGS OF FACT AND CONCLUSIONS OF LAW AND FINAL AWARD ON BIFURCATED
ISSUE OF WHETHER CLAIMANT RUSSELL MATULICH WAS EFFECTIVELY REMOVED AS
THE CEO AND DIRECTOR OF RESPONDENT GATEWAY NETWORK CONNECTIONS, LLC

- 16 -

**From:** Russell Matulich <Russ.Matulich@rticables.com>
**Sent:** Tuesday, May 17, 2022 4:29 PM
**To:** Heller, Ronald I. <rheller@torkildson.com>; Chianese, Andrew D. <Andrew.Chianese@torkildson.com>; Thomas@ThomasChristopherLaw.com
**Cc:** chase@trepaniertajima.com
**Subject:** Panel Decision - Arbitration: 21-0272-A

**Proprietary and Confidential**

Dear Mr. Heller, Mr. Chianese, and Mr. Christopher,

Please refer to today's Decision by the Arbitrators regarding the Bifurcated issue regarding me (Attached).

The Panel's final decision is that I remain the CEO and director of GNC. Also, the Panel confirmed that I was not effectively removed as ACE's CEO.

As CEO of ACE and GNC, I am instructing you and your firms to immediately cease activities related to ACE and GNC litigation / arbitration. Please also keep me timely informed any-and-all contact with you regarding ACE and GNC.

Thank you very much.

**Russ Matulich**
CEO | RTI Group Companies
+1.415.531.5350 | www.rticables.com

**Proprietary and Confidential**

| From: | Russell Matulich <Russ.Matulich@rticables.com> |
|---|---|
| Sent: | Saturday, May 21, 2022 12:54 AM |
| To: | dan.mendiola@gncix.com; Masahiro Soma |
| Cc: | Brett Lay; Brian Mass; Roland S. Certeza; David Chase |
| Subject: | [EXT] GNC |
| Attachments: | 2022 05 17 RTI-GNC Bifurcated Issue Decision_Part 1.pdf |

**RTI Group Confidential & Proprietary**

Dan and Soma-san,

I trust that all is well with you and your families during these challenging times.

Last week, binding arbitration was decided (Part 1). In short, the arbitrators made the final Decision that I am CEO of GNC. You may recall that on 17 October 2021, Dispute Prevention & Resolution ("DPR" or "The Panel") ordered our mutually-agreed-upon arbitration be split into two hearings.

Part 1 was about whether I was, or was not, effectively removed from my positions as a director and CEO of GNC. The Panel's Decision on Part 1 appears on Page 15 and is summarized as follows –

1. I was and am the CEO of GNC
2. I was and am a director of GNC
3. I was not effectively removed as the CEO of ACE

Based on other factors, decisions from 3 January 2021 may also be invalidated, but it's not important to go into detail about that here.

The Panel's Decision was a final partial award for Part 1. Part 2 is expected to complete by year-end. While the ruling was directly provided to GNC, I also directly updated the following individuals and organizations –

- GNC –
  - Brett Lay
  - Brian Mass
  - Counsel

- GTA –
  - Roland Certeza
  - David Chase

- HFI –
  - Ben Wu

- 360 Capital
  - Tony Pitt

- Lanrik Partners / GDC
  - David Yuile

- Agencies –

- o Various

- RTI Group –
  - o Employees and Contractors

All have been notified and none has disagreed with the outcome until now. For that, I am grateful. `

My overarching message to them spoke directly about GNC's importance and the privileged role of critical infrastructure. I emphasized GNC's importance to Guam, CNMI, and the island nations. It was not by chance that important visitors recently descended upon Guam – Guam is important to the United States' national security, and we are all pleased that they will be more frequently visiting us.

Just as we did from the beginning until 3 January 2021, we will do the same now –

- I am GNC's CEO and a director
- GNC's technical direction will now come from Masahiro Soma, RTI Group CTO
- The Station Manager (you) will take your technical direction from Soma-san
- You report to Soma-san
- Soma-san reports to me

The priority? Customers, of course!

Kindly notify those who are affected day-to-day. The attached final Decision is public information and can be shared with your colleagues. I'll be in Miami most of next week, but let's schedule a call to get Soma-san and me up to speed.

Feel free to call Soma-san or me with any questions you might have.

Best regards,

Russ Matulich
CEO, RTI Group
ACE | GNC | RAM | RTI-C | RTI-E | RTI-O
+1.415.531.5350

**RTI Group Confidential & Proprietary**



May 28, 2022

Russell Alan Matulich
955 Serendipity Way
Napa, CA 94558

Dear Mr. Matulich,

**Re: Termination as a Statutory Manager and a Director**

The Members of Gateway Network Connections, LLC ("**GNC**" or the "**Company**") hereby inform you that they have resolved to remove you as a statutory manager and a Director of the Company.

This action of the Members was taken by means of a unanimous written consent by the Members dated May 28, 2022, which effectively removed you as a statutory manager and a Director of the Company as of that date. Please be advised that you do not have any authority to act on behalf of the Company and, in light of your termination, please immediately cease and desist from representing yourself as a statutory manager and/or a Director of the Company.

Yours sincerely,

*Brett Lay*
_____
Brett Larry Lay
Chairman



May 28, 2022

Russell Alan Matulich
955 Serendipity Way
Napa, CA 94558

Dear Mr. Matulich,

**Re: Termination of Chief Executive Officer Position**

     The Board of Directors of Gateway Network Connections, LLC ("**GNC**" or the "**Company**") hereby informs you that it has resolved to remove you from your position as Chief Executive Officer of the Company.

     This action of the Board was taken by means of a unanimous written consent by the Directors dated May 28, 2022, which effectively removed you from your position as Chief Executive Officer of the Company as of that date. Please be advised that you do not have any authority to act on behalf of the Company and, in light of your termination, please immediately cease and desist from representing yourself as an officer of the Company.


Yours sincerely,


*Brett Lay*
_____
Brett Larry Lay
Chairman



May 23, 2022

Russell Alan Matulich
955 Serendipity Way
Napa, CA 94558

Dear Mr. Matulich,

**Re: Termination of Chief Executive Officer Position**

The Board of Directors of Asia Connectivity Elements, Inc. ("**ACE**" or the "**Corporation**") hereby informs you that it has resolved to remove you from your position as Chief Executive Officer of the Corporation.

This action of the Board was taken by means of a unanimous written consent by the Directors dated May 23, 2022, which effectively removed you from your position as Chief Executive Officer of the Corporation as of that date.

Yours sincerely,

David Stuart Yuile
Chairman

Asia Connectivity Elements ■ 7 Turtleback Lane, Westport, CT 06880

| From: | Russell Matulich <Russ.Matulich@rticables.com> |
|---|---|
| Sent: | Monday, August 8, 2022 6:59 PM |
| To: | Security-GNC; Laura Cepeda; Security@RTICables.com |
| Cc: | Masahiro Soma; Dan Mendiola; Ariel Nabas; *Security; Security-GNC; brian.s.mass@gmail.com; b lay; David Yuile; Roland S. Certeza; David Chase |
| Subject: | Re: [EXT] Customary Access Request |
| Attachments: | 2022 07 28 Order Granting Motion to Confirm[.pdf; 2022 08 01 Order on RTI Motion for SJ on GNC Counterclaim[32].pdf |

Dear GTA and Disputed GNC directors,

Dan Mendiola is the Security PoC for JGA North and an RTI Group employee. That alone is allows him unfettered access to our cable station.

If Dan's role with the security agencies somehow fails to satisfy our request, please spend time to reach the 1 August 2022 Order (attached) as it reminds you that I was CEO of GNC and I am CEO of GNC. I am sorry this is contrary to your preference, Brian, but you signed a written document agreement to binding arbitration. I can resend that to you as well if you like.

As GNC's CEO, I am reminding you that any failure to allow Customary Access to our GNC facility, as if it was prior to 31 December 2020, violates the Confirmed / Enlightened Federal Order dated 28 July 2022. We will pursue it as a crime.

Lastly, I do not speak for Dan Mendiola personally, but my general understanding is that there has been no due process for Mr. Mendiola to disagree in court to what (I believe) he considers libel. You may wish to enter a formal apology here for all to see...or perhaps he has already been through the court system on your embezzlement charges?

I took a cursory look at the term, *embezzlement* just now...it's defined as –

"**The elements of embezzlement are settled. There must be a relationship such as that of employment or agency between the owner of the money and defendant; the money alleged to have been embezzled must have come into the possession of defendant by virtue of that relationship; there must as well have been an appropriation or** conversion **of that money, and such must have been intentional and fraudulent.**"

As a separate matter, is there a contractor that we (GNC) are using by the name of Nova? I just recall that I rejected them when they were recommended for HMB. There were "issues" with them (I thought).

Again, please put your apology for the libel against Dan Mendiola to all here.

Thank you.

Russ

| From: | O'Halloran, Jon <JOHalloran@firstrepublic.com> |
|---|---|
| Sent: | Thursday, August 11, 2022 4:48 PM |
| To: | Brian Mass |
| Cc: | Castillo, Ariel; Fuchs, George; Dobranski, Edward; Sabnani, Janisha; Brett Lay; Macklin, Meryl |
| Subject: | RE: [EXT] Asia Connectivity Elements Inc. |

Hello Brian,

Upon review of your email and attachments by FRB Legal, we'll continue to maintain the status quo on ACE – no changes.

Thank you,

Jon O'Halloran
Manager
First Republic Bank | Napa Office
(707) 251-4101
johalloran@firstrepublic.com

---

**From:** Brian Mass <brian.mass@gncix.com>
**Sent:** Wednesday, August 10, 2022 7:19 PM
**To:** O'Halloran, Jon <JOHalloran@firstrepublic.com>
**Cc:** Castillo, Ariel <acastillo@firstrepublic.com>; Fuchs, George <gfuchs@firstrepublic.com>; Dobranski, Edward <Edobranski@firstrepublic.com>; Sabnani, Janisha <jsabnani@firstrepublic.com>; Brett Lay <Brett.lay@gncix.com>; Macklin, Meryl <Meryl.Macklin@bclplaw.com>
**Subject:** Re: [EXT] Asia Connectivity Elements Inc.

Jon,

The May 17, 2022 order only determined that Asia Connectivity Elements, Inc. ("ACE") did not properly remove Mr. Matulich as CEO prior to his removal as CEO and manager of Gateway Network Connections, LLC ("GNC") in January 2021. Moreover, the order only establishes that Mr. Matulich may be considered **CEO of GNC** for discrete past purposes related to the pending arbitration. The order does not address Mr. Matulich's current status in regard to GNC or ACE. ACE is not a party to that arbitration and would not be bound by any determinations in that proceeding.

On May 23, 2022, the ACE board of directors terminated Mr. Matulich as CEO, again, and confirmed his termination in a noticed meeting on June 21, 2022. The respective notices and minutes are attached. It is also noted that Mr. Matulich was subsequently removed as CEO of GNC, and the arbitration panel confirmed it is not reviewing the subsequent removal of Mr. Matulich as CEO of GNC. While ACE and GNC disagreed with the Arbitrators' May 17 decision that the January 2021 removal was not effective, this second removal was in strict compliance with the procedures identified by the Arbitrators.

To be clear, Mr. Matulich is not CEO of ACE and has no authority to access its bank accounts. ACE will seek appropriate relief to restrain Mr. Matulich from accessing its accounts. In the meantime, permitting account access of any kind to Mr. Matulich cannot be permitted. ACE reserves all rights, and waives none.

1

Exhibit 7
Case 1:22-cv-00024    Document 1    Filed 10/07/22    Page 39 of 55

Should you have any further questions, please ask your legal counsel to reach out to our legal counsel, Meryl Macklin, who I have copied on this email.

Regards,
Brian

**Brian Mass**
Chief Financial Officer | ACE
+1.917.575.0695

---

**From:** O'Halloran, Jon <JOHalloran@firstrepublic.com>
**Date:** Wednesday, August 10, 2022 at 8:26 PM
**To:** BRETT.LAY@RTICABLE.COM <BRETT.LAY@RTICABLE.COM>, Brian Mass <brian.mass@hmb-s.com>
**Subject:** [EXT] Asia Connectivity Elements Inc.

Hello Brett and Brian,

First Republic Bank was presented with documents from Mr. Russell Matulich concerning the outcome of recent Arbitration proceedings regarding Asia Connectivity Elements, Inc. First Republic Bank's general counsel reviewed the documents and prepared the below statement to be forwarded to you both.

**First Republic Bank is in receipt of the May 17, 2022 Arbitration Award entitled "Findings of Fact and Conclusions of Law and Final Award on Bifurcated Issue of Whether Claimant Russell Matulich was Effectively Removed as the CEO and Director of Respondent Gateway Network Connections" (Arbitration No. 21-0272-A, Dispute Prevention and Resolution, Inc., Honolulu, Hawaii). As reflected by this Arbitration Award, Russell Matulich remains the CEO of Asia Connectivity Elements, Inc. Accordingly, we will work with Mr. Matulich to add him back as an authorized signer for the ACE account(s) at First Republic Bank.**

Please feel free to reach out to me directly if you have any questions.

Regards,

**Jon O'Halloran**
Managing Director

 **First Republic Bank**
1753 Trancas Street **|** Napa, CA 94558
**Direct** (707) 251-4101 | johalloran@firstrepublic.com

It's a privilege to serve you®

***Go Digital***: Learn what you can do at home with *digital banking at First Republic*.

 Point your phone's camera at this code to *get started.*

2
Exhibit 7
Page 2 of 3

 

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. This message cannot be guaranteed to be secure or error-free.

First Republic Bank and its related entities do not take responsibility for, or accept time-sensitive instructions sent by email including orders, funds transfer instructions or stop payments on checks. All instructions of this nature must be handled by direct communication, not email.

We reserve the right to monitor and review the content of all email communications sent or received. Emails sent to or from this address may be stored in accordance with regulatory requirements.

| | |
|---|---|
| **From:** | Russell Matulich <Russ.Matulich@rticables.com> |
| **Sent:** | Friday, July 15, 2022 12:33 AM |
| **To:** | In Hui Yu-Healy |
| **Cc:** | Melissa Bruhl; Shota Masuda |
| **Subject:** | Validity of Contracts with GNC |
| **Attachments:** | 17 May 2022 final Decision_Part.pdf; 17 June 2022 Order : TRO.pdf |

**RTI Cable Proprietary & Confidential**

Dear Ms. Yu Healy,

Although we have not yet met, I know your firm well. CalPac was instrumental in building Gateway Network Connections ("GNC"), Guam's only neutral cable landing station and data center.

I founded GNC to solve the problems of limited network connectivity between an among Asia, Australia, and the United States. The minority partner whom I chose is Telegum – you know the firm as GTA. GTA has two (2) serving as GNC directors and my investment firm, Asia Connectivity Elements ("ACE"), who is the majority owner of GNC, and has three GNC board positions.

After an unnecessarily lengthy binding arbitration process, the 17 May 2022 final Decision was clear and concise (attached). While the final Decision to Part 1 is on Page 15, at the bottom of Page 12, you will note the following –

*Because Matulich was never removed as the CEO of GNC by the only body with the authority to do so under the GNC Operating Agreement, Matulich has not been removed as the CEO of GNC and remains the CEO of GNC.*

Not surprisingly, the minority partner and former colleagues of mine are disappointed in the Panel's final Decision and now claim to have fired me. You are strongly encouraged to have counsel review any new claims by GTA and/or former RTI Cable employees purporting to part of ACE and/or GNC.

Sadly, what has taken place has hurt Guam's economy and greatly harmed dozens of employees and their family members.

As the Panel ruled that all contracts are void *ab initio*, please refer me to the right people at CalPak so that my firm may review all contracts related to GNC. This is important, as I will need to decide which contracts will remain effective as all contracts are void unless they have my explicit approval.

Please let me know when you are available for a brief call.

Best regards,

**Russ Matulich**
CEO, RTI Group Companies
www.rticables.com +1.415.531.5350

**RTI Cable Proprietary & Confidential**

| **From:** | In Hui Yu-Healy <inhuih@calpacguam.com> |
|---|---|
| **Sent:** | Thursday, July 21, 2022 5:15 PM |
| **To:** | 'Brian Mass'; Rajesh Kurian |
| **Cc:** | Mathew Joseph |
| **Subject:** | RE: [EXT] RE: CalPac Cost Proposal to GNC - Supply & Installation of Fiber Optic Cable 12-03-2020 |
| **Attachments:** | Validity of Contracts with GNC; CalPac Support Grid PO DH2 001 15 Apr 2022.pdf |

Hello Brian,

I received the attached email from Mr. Russell Matulich at RTI. He is asking us to provide the info of what contracts we currently have with GNC. As you can see in his email, he needs to review all contracts and make a decision whether contract will remain effective or void.
Could you advise if we just provide the PO/job information to Mr. Matulich? Is there a possibility for this work or PO to be cancelled?
Please advise. So I can reply to Mr. Matulich. Thanks!

Best Regards,

In Hui Yu-Healy
President
*California Pacific Technical Services, LLC*
www.calpactechnical.com
*DBA: CalPac*
*P.O. Box 8950*
*Tamuning, Guam 96931*
*Tel: 671-646-3645/46/48*
*Fax: 671-646-3643*
*Cell: 671-777-2600*
*This document is intended only for the use of the above recipient. Please be advise that this message and attachments contain information that is* **privilege and confidential** *and may not be disclosed to any other entity or person.*



Torkildson Katz                                                          4 August 2022
700 Bishop Street 15F
Honolulu, HI 96813
Attn: Mr. Ronald Heller
Attn: Mr. Andrew Chianese

Cox Fricke LLP | A Limited Liability Law Partnership LLP
800 Bethel Street, Ste 600
Honolulu, HI 96813
Attn: Mr. Randall C. Whattoff, Partner

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center 7F
San Francisco, CA 94111
Attn: Ms. Meryl Macklin, Partner
Attn: Mr. Adam Vukovik

**Subject: Motion for Summary Judgment + Other Impacts**


Dear Mr. Heller, Mr. Chianese, Mr. Whattoff, Ms. Macklin, and Mr. Vukovik,

      Separately, I told each of your firms that I am the Chairman, CEO and a director of Gateway Network Connections, LLC, a Guam limited liability company ("GNC"), and/or also the Chairman, CEO and a director of Asia Connectivity Elements Inc, ("ACE").

      While initially intended to be Singapore entities, ACE and GNC were brought to life in Guam during 1H 2019. I recall thinking that, given the complexity of our mission, I wanted GNC's statement of purpose to be concise and simple – something that everyone could rally around. It reads –

"***To develop, construct, own and operate a***
***neutral data center and a cable landing station in Piti, Guam***"

      I am the leader of RTI Group Companies and, except for RTI JGA, I hold the titles and possess the authority that is customarily associated with a CEO and a company director, the likes of which appear in related corporate documents.

      I have authority for any-and-all purposes related to this dispute, Arbitration No. 21-0272-A ("Arbitration") between the Claimants RTI Connectivity Pte Ltd ("RTI-C") and Russell A. Matulich ("Mr. Matulich" or "me") vs. GNC.

      **On 17 May 2022**, Dispute Prevention & Resolution ("DPR" or "the Panel") issued its final Decision ("Decision" or "the Order") to Part 1 of the bifurcated process. The document is attached and speaks for itself.

      Initially, Torkildson Katz represented the adverse parties and that made sense until the 17 May 2022 Order. Within hours of the Panel's final Decision, I wrote to Mr. Heller indicating the Panel's final Decision. I told Mr. Heller clearly and directly – he worked for me. I copied others from Torkildson Katz to behave transparently while working to keep our cables safe and secure.

GNC LLC ■ 320 Marine Corps Drive 3F ■ Guam 96913

**On 19 May 2022**, I wrote to Mr. Heller asking who he had been in touch with. As my prior directive was clear, the lack of response meant to me that they were conflicted or exited the process. As professional services who aspire to a higher calling, they were expected to follow or appeal the Panel's Order as per the mutually agreed binding arbitration. Disregarding the Panel was, in my opinion, disrespectful – but that's how many of us felt.

**On 21 May 2022**, given Mr. Heller's absence of any communication, I was beginning to be concerned and sent hm an email reminding him of his ethical obligations as a law practitioner. I felt uneasy – concerned that something unethical may be forming. I sent other e-mails; there was no response.

**On 28 May 2022**, after providing him with many directives, Mr. Heller suddenly appeared on the scene. He sent an e-mail to my counsel, Mr. Tajima, and it had two false attachments. Mr. Tajima's letters purported my firing for the third or fourth time – each time it was improper.

Mr. Lay apparently felt comfortable trying on the CEO and Chairman titles. Mr. Lay has never lawfully been GNC's CEO, and Mr. Lay has never lawfully served as GNC's Chairman. Mr. Lay has never held a CEO title at any RTI Group company. If he wishes to be the CEO of a company, perhaps he can start something himself instead of unlawfully attempting to take it from others. Same goes for Mr. Mass.

Mr. Heller, his colleagues, and their firm failed their legal and ethical obligations. I confided in Torkildson Katz and its representatives, gave them specific directives and instructions. I understood Mr. Heller to be working on behalf. Trusting Mr. Heller left us vulnerable and damaged our company.

I sent about a half dozen emails providing Torkildson Katz with simple, ethical, and appropriate directives: they failed to execute any of my many directives as GNC's CEO; they failed to tell me that they could not represent me for whatever reason. Law firms and law practitioners are held to a higher standard, and Mr. Heller and Mr. Chianese' actions damaged us because we thought they were protecting us when they were pretending to protect us while secretly working against us with Messers. Mass and Lay.

**On 7 June 2022**, the Panel issued a TRO – the Order was clear and the Panel appeared to understand that RTI has $300m+ being jeopardized by various factors. The bad actors made up security processes that did not apply given the TRO. As RTI saw it, their processes appeared to have been invented to drive us into bankruptcy by limiting our growth.

As RTI provides connectivity to the world's largest Internet users, we cannot grow unless we have clear access to our cage, are able to increase our power, are able to add equipment, and allowed to expand our inventory. We should not have to ask for permission in a facility.

**On 17 June 2022**, as damages continued and losses increased as a result of not being able to enter our proprietary space, RTI applied for and received further clarification from the Panel with respect to the 7 June 2022 TRO.

Not being able to access our caged space is a violation under RTI's National Security Agreement ("NSA") with the United States Department of Homeland Security ("DHS"). The Panel clarified the types of equipment and power that were approved. The Panel took care to protect our cables given the role they play in developing our economy and defending our country.

Within the 17 June 2020 Order, the Panel defined Customary Access as being how we previously operated prior to 31 December 2020 when the founders, Soma-san and I were putting everything in motion.

Soma-san and Dan Mendiola were the key individuals who were inside GNC prior to 31 December 2020. Nevertheless, GNC brought in people who are very polite but who don't do much more than watch for danger.

The GNC people in these roles are simply there to harm our business and, upon information and belief, hope to force us into bankruptcy so they can get paid, perhaps buy us for pennies. My most recent offer from a giant Private Equity firm consisted of paying me $15m+ for selling them my interest in the dry companies while paying me $5.00 for my $300m+ cable investment. Any law-abiding fiduciary would put their offer to the shareholders for consideration as I did. No one else did.

The Panel's Orders under the direction of rogue directors who share a common interest as GNC directors, have made no lawful decisions since January 2020. The Panel identified the directors' actions since their defective 3 January 2021 board meeting, as void *ab initio*.

**On 29 June 2022**, Cox Fricke LLP appeared to join Mr. Heller and, looking to get our company back on track and keep our assets safe, I believed to be essential to inform counsel of the shaky legal foundation that Mr. Heller had lain for subsequent counsel. I wrote to Mr. Randall Whattoff, a Partner at Cox Fricke, indicating my role as GNC's CEO. I indicated that I had not budget to hire him or his firm's services. My message was ignored.

**On 1 July 2022**, I wrote to Mr. Whattoff asking for a call. I indicated that our firm was and is under duress – we operate in various damage-control modes because former and disgruntled RTI Cable employees seek to harm our business. My request was ignored. I read a response from Mr. Whattoff around that time which indicated to me that he either had an issue with the Panel's authority or was misinformed about what RTI has endured for more than a year.

**On 4 July 2022**, I wrote again to Mr. Whattoff indicating that,

> "*With respect, if you believe that your firm was contracted by GNC,
> then you work for me as I am GNC's CEO & Chairman, as well as a director.*"

As he had newly joined alongside Mr. Heller's team, Mr. Whattoff was either underinformed, misinformed, or was not interested finding common ground.

**On 8 July 2022**, Bryan Cave Leighton Paisner ("BCLP") appeared to be joining alongside Messers. Heller and Whattoff. Messers Heller and Whattoff both acted as if the Panel's ruling did not apply. I know this because our firm's $300m+ of subsea cable investments were getting choked by $7m of cable landing investments, and by the very building that my team designed to protect our subsea cable assets. If counsel believed the Panel to have authority, they would have sought common ground.

Expecting more attacks that could drive us out of business, I rapidly reached out to Ms. Meryl Macklin, a Partner at BCLP, indicating,

> "*I write to inform you that I am GNC's CEO,
> Chairman, and a company director as well. If you believe that
> You have been hired and if you expect to be paid by GNC, then you work for me.*"

**On 13 July 2022**, I sent another e-mail attempting to summarize the complexities of how I structured the entities to operate as one. Initially, I was encouraged by Ms. Macklin's attempt to bring GTA, seemingly under control, but things got worse. Now they were attempting to withhold all power and the

3

directors linked to Coronado Guam LLC and Coronado Investments Delaware – are standing by awaiting counsel's advice.

I do not mention ACE and GNC because they cannot be Ms. Macklin's client as I am the Chairman, CEO, and a director of ACE and GNC.

As the CEO of a team that built, owns, and operates the world's largest neutral cable to Asia, I feel privileged to be building critical infrastructure. Those responsible for building critical infrastructure rarely think of it as wealth creation for our own taking.

Even in this dark time there are other encouraging items too: with the industry increasingly rooting for us given the importance of what we do, the United States government engaging more directly, and the world's largest Internet users watching with interest, we cannot bring you up to speed in 18 days, much less 18 months. And frankly, why should my firm be obligated when we are trying to make up for the cash that was separated from us. On 1 January 2021, I had 5 weeks of cash to last us…that was 19 months ago!

**On 28 July 2022**, the 1st District Court of Hawaii confirmed the 17 June 2022 Order which further clarified the 7 June TRO. To disobey our requests at this point is to risk enforcement locally and criminal penalties for the parties that feign help.

**On 1 August 2022**, the Panel granted our Motion for Summary Judgement ("MSJ"). While the MSJ mirrored the fact that I was and am the Chairman, CEO and director of ACE and GNC, it also provided additional clarity as follows –

**"The Panel, having determined that for
All purposes in this arbitration Matulich was not
Effectively removed as the CEO or Director of GNC there is no
longer any question of fact that when GNC submitted the counterclaim, it
did not have the required unanimous authorization of the board of directors of GNC."**

As an experienced commercial person who is not a lawyer, I would like to understand the legal theory behind the 8 July 2022 scenario where my counsel asked who her other clients were. Her response was as follows –

*"Yes, BCLP represents GNC, ACE, and GTA"*

Within minutes of informing my counsel that the firm in which she is a Partner represents, among others, ACE and GNC, she discussed her ethical obligations for represented parties.

Therein lie some problems and with respect, I wish to seek some direct answers –

(1) If Bryan Cave had imperfect information on 8 July 2022 about Matulich's role as CEO and director of ACE and GNC, what is Bryan Cave's understanding of the impact, if any, to Matulich CEO roles in ACE and GNC in a post MSJ environment (2 August 2022)?

(2) As Torkildson Katz blatantly ignored the Panel's 17 May 2020 final Decision, and Cox Fricke and Bryan Cave claim to also represent ACE and GNC (among others), how is it that the Panel's ruling, does not put all three firms in conflict?

(3) Why is it that Torkildson Katz can stay silent for a week and a half, work against us for the time when we were sending them e-mails, and show up on the scene again without any conflict.

I freely admit that I am not a lawyer, however, the pointed ethics' concerns stated a month ago appear to be pointing in the other direction following the 1 August 2022 MSJ. GNC cannot be in arbitration against GNC and I am curious why that is not clear to everyone.

For this and other reasons, as ACE and GNC's Chairman, CEO, and director, I will be removing certain GNC directors. The MSJ clarified my status for anyone that might have been on the fence. I am also issuing other directives.

Effective immediately, as ACE's Chairman, CEO, and director, and as GNC's Chairman, CEO, and director, the firms of Torkildson Katz, Cox Fricke, and Bryan Cave Leighton Paisner are hereby directed as follows –

- Cease any-and-all communications with parties in this litigation,
- Contact Mr. Tajima to determine the process for appropriately exiting the process,
- As replacement counsel has already been hired, with respect, your services are now terminated.

Please contact Mr. Tajima or Mr. Jenkins for clarifications, questions, and/or concerns.

Best regards,

**Russ Matulich**
Chief Executive Officer
+1.415.531.5350 | www.rticables.com

  

<u>**By email, facsimile, and hand delivery**</u>:                    August 8, 2022 (09:30AM Guam)

Gateway Network Connections, LLC
CEO and Chairman Russell Matulich
320 North Marine Corps Drive
Piti, Guam 96915
        c/o Registered Agent Stanley C. Wilson
        142 E. Malate Street, Mongmong, Guam 96910

Asia Connectivity Elements, Inc.
CEO and Chairman Russell Matulich
268 Bush Street #77, San Francisco, CA 94104
        c/o Registered Agent Stanley C. Wilson
        142 E. Malate Street, Mongmong, Guam 96910

TeleGuam Holdings, LLC
President & CEO, Roland Certeza
624 N. Marine Corps. Drive
Tamuning, Guam, 96913
        c/o Registered Agent
        The Company Corporation
        251 Little Falls Drive
        Wilmington, Delaware 19808

1.  Subject:  Call for and Notice of Meeting of the Members of Gateway Network Connections, LLC

2.  Dear Members, Managers, and Directors of GNC:

    a.  Serving as a manager, director, and chairman of Gateway Network Connections, LLC, a Guam
        limited liability company ("GNC") and as Asia Connectivity Elements, Inc., a Guam corporation
        ("ACE")'s CEO and chairman controlling 51% of the membership interest of GNC, I write to call
        and notice a meeting of the members of GNC for the following purposes:

3.  Removal of Brett Lay and Brian Mass as statutory managers and/or directors of GNC;

4.  Election of two replacement ACE-appointed statutory managers and/or directors of GNC;

5.  Formally canceling the purported void ab initio GNC Member resolution, minutes, and action dated 28
    May 2022 signed by a false usurper ACE CEO, Brett Lay. The cancellation shall be effected by the true
    GNC CEO by placing on the face of each page of the canceled documents, **CANCELED AS VOID AB
    INITIO**.

6.  Formally canceling the void ab initio GNC Member resolution, minutes, and action dated 20 June 2022
    signed by a false usurper ACE CEO, Brett Lay. The cancellation shall be effected by the true GNC CEO
    by placing on the face of each page of the canceled documents, **CANCELED AS VOID AB INITIO**.

7. Formally canceling any and all purported void ab initio GNC Member resolution, minutes, and action not otherwise mentioned above, dated after 17 May 2022 until the date of this letter, signed by a false usurper ACE CEO, Brett Lay. The cancellation shall be effected by the true GNC CEO by placing on the face of each page of the canceled documents, **CANCELED AS VOID AB INITIO**.

8. Resolving that David Yuile has never been a statutory manager and/or director of GNC and that any purported document that Mr. Yuile signed in such a capacity or capacities is formally cancelled as void ab initio. The cancellation shall be effected by the true GNC CEO by placing on the face of each page of the canceled documents, **CANCELED AS VOID AB INITIO.**

    a. Details of the meeting of the members of GNC are as follows –
        Date: 19 August 2022 (Friday)
        Time: 09:00AM (Guam)
        Location: GNC Data Center at 320 North Marine Corps Drive: Room FM 200
        Video Link: Participants may attend by TEAMS video conference, which meeting shall be recorded and placed in the minute book of GNC. The record date for this meeting shall be the date of this letter, 8 August 2022.

        <Meeting link – GNC Members meeting>

    b. https://teams.microsoft.com/l/meetup-join/19%3ameeting_MjEzNWZhZjAtNDBhNi00MWYwLTk5YmMtYWFhNGRmYjUzMzgx%40thread.v2/0?context=%7b%22Tid%22%3a%223bde67a4-cae7-4e56-b4fc-84c41993b414%22%2c%22Oid%22%3a%22307759da-da3b-4198-8883-7834a04b138f%22%7d

ACE, as 51% majority owner of GNC, nominates (1) Masahiro Soma, and (2) Laura Cepeda to replace Brett Lay and Brian Mass as the ACE-appointed GNC statutory managers and/or directors. If my proposal is adopted, the ACE-appointed directors of GNC will be –

    Mr. Russell Matulich, Statutory Manager, Chairman, and Director
    Mr. Masahiro Soma, Statutory Manager and Director
    Ms. Laura Cepeda, Statutory Manager and Director

ACE does not call, at this time, for any change in the TeleGuam Holdings, LLC, ("GTA")-appointed directors of GNC.

If you have any questions or would like to appoint me as a proxy, or submit nominations, please feel free to contact me at your earliest convenience.

Very truly yours,

Russell Matulich
CEO of RTI Group
ACE | GNC | RAM | RTI-C | RTI-E | RTI-O

cc:

Mr. David Chase, GTA
Mr. Brian Mass
Mr. Brett Lay
Mr. Daniel Mendiola, Guam Station Manager & RTI SPoC

2

Mr. David Yuile

**ACE** Inc                                                                    **Gnc** llc

<u>**Delivered by email, and courier**</u>                                    22 August 2022

Mr. Brian Mass
7 Turtleback Lane
Westport, CT 06880

Subject: Your Removal as statutory manager and/or director of GNC

Dear Mr. Mass,

A Special Meeting of the Members was held on 19 August 2022 where you were removed as an Asia
Connectivity Elements, Inc. ("ACE") ACE-appointed manager and/or director of Gateway Network
Connections LLC. ("GNC").

Thank you.

Russ Matulich
Chairman & CEO

**ACE** Inc                                                              **GNC** llc

<u>Delivered by email, and courier</u>                                    22 August 2022

Mr. Brett Lay
801 Margarita Avenue
Coronado, CA 92118

Subject: Your Removal as statutory manager and/or director of GNC

Dear Mr. Lay,

A Special Meeting of the Members was held on 19 August 2022 where you were removed as an Asia
Connectivity Elements, Inc. ("ACE") ACE-appointed manager and/or director of Gateway Network
Connections LLC. ("GNC").

Thank you.

Russ Matulich
Chairman & CEO

| | |
|---|---|
| **From:** | Russell Matulich <Russ.Matulich@rticables.com> |
| **Sent:** | Saturday, September 3, 2022 7:14 PM |
| **To:** | Brian Mass; brett.lay@hmb-s.com; David Yuile; Ronnie Lim; Chris Brungardt (HMB-S Forward); Roland S. Certeza; David Chase; Ariel Nabas; Security-GNC; brian.s.mass@gmail.com; blayinising@hotmail.com; David Yuile |
| **Cc:** | Dan Mendiola; Laura Cepeda; Benny Choo; Masahiro Soma; Shota Masuda |
| **Subject:** | FW: [EXT] RTI - JGA North |
| **Attachments:** | RTI JGA South 90 Day Report Supplement with Appendix (7Dec2020).pdf; RTI JGA-N 90 Day Report Supplement with Appendices (7Dec2020).pdf; CMAs Notice June 8, 2022.pdf |

**RTI Group Proprietary & Confidential**

Gentlemen,

The Compliance Monitoring Agencies ("CMA's") are aware that the 8 June 2022 notice, where RTI Cable was not copied, contains false statements. Those inaccurate claims include that RTI Solutions ("RTI-S") prioritizes JGA North security, that I was properly terminated from GNC, and that Daniel "Dan" Mendiola is not the JGA North Security PoC.

RTI Group is recognized by the CMA's as having the security policy responsibilities, I remain CEO of ACE and GNC, and Daniel "Dan" Mendiola remains the Security PoC. None of this has changed.

As a citizen of the United States, I strongly believe that certain RTI-S directors should not be negotiating against your own government on matters of national security, period. Had you served your country, you might feel differently about your obligations to protect it.

As for GNC, I am patiently waiting for legal processes to complete in hopes that the RTI Cable team can return GNC to the esteemed position it held prior to 31 December 2020. Also, Dan Mendiola remains the Security PoC and the CMA's are updated on accusations that went against Daniel "Dan" Mendiola after he chose to follow the rule of law.

The 28 July 2022 federal order is being domesticated in Guam and will soon be enforceable. I trust that you will obey the United States federal government's court system as RTI Cable plans to vigorously enforce it.

To help jog your memory about our security obligations, I am attaching the most recent accurate update to GNC's Security policies. These were sent to the CMA's after Messrs. Lay, Mass and Yuile purportedly sold their equity interest in Asia Connectivity Elements ("ACE"). For whatever reason, no update was on foreign control was provided to the CMA's until January 2021 where I informed DC counsel.

Until today, RTI Group has the security responsibilities and obligations. RTI Cable has made no attempt to transfer or assign our obligations; it would be improper to do so. That said, please help us understand –

***By whose authority does the foreign controlled board of RTI-S, the management of GTA, and/or GNC directors (w/out unanimous consent) claim to have security responsibilities?***

On the 1st and 16th of August 2022, I listed various JGA North license and National Security Agreement ("NSA") violations that RTI-S and its directors caused. It matters not whether your actions were intentional or accidental, the fact remains that RTI-S has caused many violations as a licensee of JGA North and mitigation party, and the same individuals have prevented RTI Cables from being able to act on some of our obligations.

I am requesting RTI-S take action by voluntarily quitting its licensee obligations inside of JGA North. Doing so will allow RTI Cable to better protect our critical infrastructure investments on Guam.

Thank you for your consideration.

Russ

**RTI Group Proprietary & Confidential**