1
2
3
4

**IN THE DISTRICT COURT OF GUAM**

5
6
7

GATEWAY NETWORK CONNECTIONS, LLC,
a Guam limited liability company and ASIA
CONNECTIVITY ELEMENTS, INC., a Guam
corporation,

8

     Plaintiffs,

9

     v.

10

RUSSELL MATULICH,

11

     Defendant.

Case No. 1:22-cv-00024

**DECISION AND ORDER GRANTING
MOTION TO DISMISS FIRST AMENDED
COMPLAINT FOR LACK OF SUBJECT
MATTER JURISDICTION**

12
13
14
15
16
17
18
19
20
21

     Presently before the Court is Defendant Russel Matulich's motion to dismiss ("Mot. Dismiss," ECF No. 31) the first amended complaint ("FAC," ECF No. 29) for lack of subject matter jurisdiction. The matter was fully briefed,[1] and the Court took the matter under submission after oral arguments. (Mins., ECF No. 44.) Having reviewed the briefs, heard the arguments of counsel, and considered the applicable law and the facts of this case, the Court GRANTS Matulich's motion to dismiss and DISMISSES the action. Because the Court lacks jurisdiction, it cannot, and does not, make any findings as to the propriety of Plaintiffs', Gateway Network Connections, LLC ("GNC") and Asia Connectivity Elements, Inc. ("ACE"), motion to enjoin arbitration ("Mot. Enjoin Arbitration," ECF No. 33).

22

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

23
24
25

     Previously, the Court granted Matulich's motion to dismiss the complaint (ECF No. 18) for Plaintiffs' failure to adequately plead diversity jurisdiction but granted Plaintiffs leave to amend their complaint. (Order Granting Mot. Dismiss 4, ECF No. 27.)

26
27
28

---

[1] The motion was supported by a declaration of Chase Tajima with exhibits (ECF No. 31-1). Plaintiffs filed their opposition to the motion to dismiss (ECF No. 37), which was also supported by declarations and exhibits (ECF Nos. 37-1 – 37-4) to which Matulich filed his reply (ECF No. 42) supported by a second declaration by Chase Tajima with more exhibits (ECF No. 42-1).

Plaintiffs filed the FAC, which was verified by Brett Lay, the Chief Executive Officer ("CEO") of GNC and ACE, supported with exhibits. (FAC 15.)[2] The FAC is premised upon diversity jurisdiction. (*Id.* ¶ 8.)

The following facts taken from the FAC are as follows. Plaintiff GNC is a limited liability company ("LLC") comprised of two members: Plaintiff ACE and Teleguam Holdings, LLC dba GTA ("GTA"). (FAC ¶¶ 3-4.) ACE is a corporation incorporated in Guam with investment in GNC as its principal business activity and is thus a holding company. (*Id.* ¶ 5.) ACE's directors "are located in various locations in the United States, and for at least the last year, their board meetings have been noticed for Westport, Connecticut (with directors generally attending remotely)." (*Id.*) As a LLC, GTA's sole member is Teleguam Holdings, Inc., which is a corporation incorporated in Delaware and headquartered in Guam. (*Id.* ¶ 6.) Teleguam Holdings, Inc. "is a holding company" with its management team and directors located in Guam, where the board meetings are regularly noticed. (*Id.*) Defendant Matulich is a citizen of California and resides in Napa, California. (*Id.* ¶ 7.)

On January 3, 2021, ACE and GNC boards attempted to remove Matulich as CEO and director of both companies. (FAC ¶ 13.) On May 17, 2022, the Hawaii Arbitration Panel determined that the removals were ineffective as they failed to comply with certain procedural requirements. (*See id.* at 6-7, 27-28.) From May 23, 2022, through July 18, 2022, GNC and ACE members and directors undertook several actions to remove Matulich as CEO and director of both companies. (*Id.* ¶¶ 18-22, 26-28.)

## II.   LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction empowered to hear only those cases authorized by the Constitution or by Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A

---

[2] The Court references the page numbers located in the footer of the document and generated by the CM/ECF filing system.

court must dismiss a case if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Federal Rule of Civil Procedure 8(a)(1) requires a complaint to contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support[.]" Although the party invoking "diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction[,] . . . allegations of jurisdictional fact need not be proven unless challenged" at the pleading stage. *NewGen, Ltd. Liab. Co. v. Safe Cig, Ltd. Liab. Co.*, 840 F.3d 606, 613-14 (9th Cir. 2016) (first citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); then citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); and then citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). In addition to pleading the citizenship of parties, a complaint should allege facts to substantiate such claims. *See Harris v. Rand*, 682 F.3d 846, 850-51 (9th Cir. 2012). For example, a complaint should assert "facts regarding the location of a [corporation's] principal place of business" and "[t]hose factual allegations are entitled to a presumption of truth under" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Harris*, 682 F.3d at 850-51.

Federal courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . . ; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties[.]" 28 U.S.C. § 1332(a). "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *Rainero v. Archon Corp.*, 844 F.3d 832, 840 (9th Cir. 2016) (quoting *NewGen, LLC*, 840 F.3d at 613-14). "In cases where entities rather than individuals are litigants, diversity jurisdiction depends on the form of the entity." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). For example, a corporation is a citizen of the state of incorporation and the state where its principal place of business is located. *Id.* In contrast, LLCs are "citizens of every state of which its owners/members are citizens." *Id.* "[W]here an LLC is a member of another LLC, the citizenship of the 'sub-member' LLC is likewise defined by the citizenships of its own members." *19th Cap. Grp., Inc. v. 3 GGG's Truck Lines, Inc.*, No. CV 18-2493 PA

(RAOx), 2018 WL 6219886, at *2 (C.D. Cal. Apr. 3, 2018) (citations omitted). For individuals, citizenship in a state requires United States citizenship and is determined by domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)).

### B. Facial and Factual Attacks on Subject Matter Jurisdiction

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) motions are either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack does not challenge the veracity of the plaintiff's allegations, but instead asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* Conversely, a defendant bringing a factual attack disputes the truthfulness of the allegations underlying federal jurisdiction. *Id.*

When considering a facial challenge to subject matter jurisdiction, all factual allegations in the complaint "are taken as true and all reasonable inferences are drawn in [the plaintiff's] favor." *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013) (citations omitted). In contrast for factual challenges, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. Courts may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* Once the moving party has presented affidavits or other evidence for its factual motion, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (citation omitted).

## III. DISCUSSION

In his motion to dismiss, Matulich raises several arguments asserting that the Court lacks subject matter jurisdiction over the FAC. First, he asserts a facial attack that the FAC inadequately alleges Plaintiffs' citizenships. (Mot. Dismiss 9.) Second, he raises a factual attack and asserts that ACE is

4

controlled from California. (*Id.* at 11.) Third, he contends that the FAC defectively pleads the amount in controversy for diversity jurisdiction. (*Id.* at 12.) Ultimately, the Court concludes that Plaintiff ACE is controlled from California, not Guam as alleged in the FAC, thus destroying diversity as Matulich is a citizen of California.

### A. Matulich's facial attack fails.

Matulich levies a facial attack claiming that Plaintiffs fail to "allege what each [ACE] officer and director does to control the corporation." (*See* Mot. Dismiss 10-11 (citing *Pool v. F. Hoffman-La Roche, Ltd.*, 386 F. Supp. 3d 1202, 1220-21 (N.D. Cal. 2019)).) However, in asserting this argument, Matulich relies upon *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) and *Pool*, but ignores *3123 SMB LLC v. Horn*, 880 F.3d 461 (9th Cir. 2018). In *Hertz*, the Supreme Court clarified that a corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities[,]" which is also known as the corporation's "nerve center." 559 U.S. 77, 92-93 (2010).

> [I]t should *normally* be the place where the corporation maintains its headquarters—
> provided that the headquarters is the actual center of direction, control, and coordination,
> *i.e.,* the "nerve center," and not simply an office where the corporation holds its board
> meetings (for example, attended by directors and officers who have traveled there for the
> occasion).

*Id.* at 93 (emphasis added). The Ninth Circuit has recognized *Hertz* as binding precedent; however, it has recognized an exception for holding companies because their primary purpose of holding interest in other companies "is passive." *Horn*, 880 F.3d at 465 (citation omitted). A holding company is "not 'normal'" since "[i]t engages in little activity, so there is little to direct, control, or coordinate." *Id.* The Ninth Circuit recognized *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337 (3d Cir. 2013), wherein the Third Circuit explained why "the Supreme Court's dictum [in *Hertz*] that a corporation's nerve center is 'normally . . . not simply an office where the corporation holds its board meetings' . . . [is] inapplicable to holding companies[.]" *Horn*, 880 F.3d at 465. For a holding company "relatively short, quarterly board meetings may well be all that is required to direct and control the company's limited work" as the holding company's

primary activity of managing its assets "is straightforward and takes little time" such that "[t]he location of board meetings is therefore a more significant jurisdictional fact . . . than it was in *Hertz*[.]" *Id.* (quoting *Johnson*, 724 F.3d at 354.) Ultimately, the Ninth Circuit adopted "a rule presuming that from inception a holding company directs its business from the place where it holds board meetings[,]" which may be rebutted if "evidence shows that the corporation is directed from elsewhere." *See id.* at 469-70. It rejected the "assumption that a holding company's principal place of business is the state where its officers reside in." *Id.* at 469. Further, the Ninth Circuit remarked on the difficulty of applying that assumption, especially with "holding companies that have more than one decision maker living in more than one state." *Id.* Here, "ACE is a holding company whose predominant business activity is the passive investment in GNC, there are little to no day-to-day activities to manage" and "all decisions affecting the company occur during the director meetings." (Mass Decl. ¶ 7, ECF No. 37-4.) As such, Matulich's argument that Plaintiffs must allege what each ACE officer and director does to control ACE is incorrect. Additionally, Matulich's reliance upon *Pool* for that assertion is misplaced as the parties in *Pool* were not holding companies.

In their FAC, Plaintiffs assert that ACE, as a holding company, had its board meetings for the past year "noticed for Westport, Connecticut (with directors generally attending remotely)." (FAC ¶ 5.) Even with the Ninth Circuit's test from *Horn*, there is the additional complication that ACE's board meetings are held virtually such that it may be hard to definitively determine the location from where ACE's business is directed from.[3] In *Johnson*, the case that the Ninth Circuit relied upon in *Horn*, the Third Circuit still concluded that the holding company's principal place of business was Wilmington, Delaware because that is where the board meetings were held, even though two of the three board members often participated in the board meetings telephonically. *Johnson*, 724 F.3d at 342, 354, 356; *but see Travelers Com. Ins. Co. v. Liberty Utilities (CalPeco Elec.) LLC*, No. 2:21-CV-01485-MCE-AC, 2022 WL 992935, at *3 (E.D. Cal.

---

[3] The Supreme Court recognized this complication during "this era of telecommuting, [where] some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." *Hertz*, 559 U.S. at 95-96.

6

Apr. 1, 2022) (declining to apply *Horn* where the corporation's board meetings were routinely not held in-person);[4] *P2Es Holdings, LLC v. Trinity Petro. Mgmt., LLC*, No. 4:22-cv-03002, 2023 WL 1967949, at *5 (S.D. Tex. Feb. 13, 2023) (questioning whether virtual board meetings facilitated in Denver determines that the principal place of business is in Denver). Recognizing the Ninth Circuit's reliance upon *Johnson* in *Horn*, this Court elects to apply the general rule that a holding company's principal place of business is where the company holds its board meetings, even if some board members attend the meeting virtually. Additionally, the Ninth Circuit, Third Circuit, and the Supreme Court have recognized the need for a simple, easily-applied test for determining the principal place of business in the interests for judicial administration. *See Horn*, 880 F.3d at 470 (citing *Johnson*, 724 F.3d at 355). Further, the Ninth Circuit has recognized the impossibility of determining a holding company's principal place of business when decision-makers reside in more than one state. *Id.* at 469; *see also Hertz*, 559 U.S. at 95-96 (recognizing the imperfection in even the nerve center test where "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet").

Applying the Ninth Circuit's test for determining a holding company's principal place of business, the Court finds that Plaintiffs have adequately plead diversity jurisdiction for ACE by pleading the location of ACE's board meetings for each corporation. Therefore, Matulich's facial attack fails.

**B. Matulich's factual attack prevails as ACE's principal place of business is San Francisco, California.**

Even with the Ninth Circuit's test for determining a holding company's principal place of business, the issue of subject matter jurisdiction is not resolved. Matulich asserts a factual attack that ACE's principal

---

[4] In *Travelers Commercial Insurance Co.*, the court also distinguished *Horn* where the corporation was newly formed. 2022 WL 992935, at *3. However, the undersigned does not construe *Horn* so narrowly; rather, the rule that the location of board meetings is the principal place of business for a holding company applied to all holding companies regardless of formation date. *See Horn*, 880 F.3d at 470 (recognizing the benefits of "a rule presuming that from inception a holding company directs its business from the place where it holds board meetings").

7

place of business is California, arguing that there is no diversity jurisdiction because he is a citizen of California. (Mot. Dismiss 11.) Specifically, Matulich cites ACE's bylaws establishing San Francisco as the initial place of business, prior meetings in San Francisco, a San Francisco mailbox, and a Napa bank account. (*Id.*)

From the outset, the Court clarifies that Matulich's contention that California is ACE's principal place of business is incorrect because a corporation's nerve center is not a state, but a single place within a state. *Hertz*, 559 U.S. at 93. "[D]iversity jurisdiction 'depends upon the state of things at the time of the action brought[.]" *Horn*, 880 F.3d at 467 (citing *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004)). However, "courts must be alert to the possibility of jurisdictional manipulation." *Horn*, 880 F.3d at 470-71 (citing *Hertz*, 559 U.S. at 97). In *Horn*, the Ninth Circuit identified evidence that the plaintiff LLC's owners "manipulated the ownership structure of the real property at the center of th[e] lawsuit in order to manufacture diversity [jurisdiction]" and remanded the case to the district court to determine whether "there was jurisdictional manipulation that would warrant treating [the plaintiff] as a California citizen[,]" which would destroy diversity jurisdiction with the defendant's California citizenship. *Id.* at 463. A month before the filing of the lawsuit in *Horn*, the plaintiff was a California citizen, but the manipulation of the ownership structure "rendered the parties nominally diverse just in time to file this lawsuit in federal court." *Id.* at 471. The Ninth Circuit instructed that if the district court found jurisdictional manipulation, "it should 'take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.'" *Id.* (quoting *Hertz*, 559 U.S. at 97). "The Supreme Court has at least suggested that the party seeking to establish diversity jurisdiction bears the burden of showing that there has been no jurisdictional manipulation when that question arises." *3123 SMB LLC v. Horn*, No. CV 14-8115 DSF (FFMx), 2018 WL 5801875, at *1 (C.D. Cal. May 7, 2018) [hereinafter *Horn II*] (quoting *Hertz*, 559 U.S. at 96-97).

Here, this lawsuit was initially filed in October 2022, and in May and July of that same year, ACE held board meetings in Westport, Connecticut. (Mass Decl. Ex. 4, 6; ECF No. 37-4 at 38, 56.) Brian Mass, who resides in Connecticut, is one of ACE's directors and is ACE's Chief Financial Officer, Treasurer, and Secretary, and attests that he attends ACE's director meetings in person. (Mass Decl. ¶¶ 1, 7, ECF No. 37-4.) Meanwhile, ACE's two other directors, Brett Lay who lives in California and Hawaii, and David Yulie who lives in Australia, "appear telephonically for the meetings as needed." (*Id.*)

The Court has concerns of jurisdictional manipulation such that 2022 is not the relevant time frame to determine ACE's principal place of business. Plaintiffs and Matulich are engaged in highly contentious litigation in multiple fora, ranging from federal district courts, state courts, and arbitration panels. One dominant issue that the Hawaii Arbitration Panel with the Dispute Presentation and Resolution, Inc. adjudicated was "whether ACE effectively removed Matulich as its CEO, which GNC claims ACE did at a validly held special meeting of the ACE Board on January 3, 2021." (FAC 26.) Ultimately, the Hawaii Arbitration Panel "conclude[d] that the ACE special meeting of the ACE Board of Directors held on January 3, 2021, was not called in accordance with the Bylaws of ACE and that therefore, the actions taken at said meeting are void *ab initio*." (*Id.* at 27-28.) After the Hawaii Arbitration Panel reached this conclusion, ACE's Board held numerous meetings to remove Matulich as ACE's CEO (*id.* ¶¶ 26-28), but Matulich vehemently disputes these meetings, (Matulich Decl. ¶ 11, ECF No. 18-1).[5]

Plaintiffs only provide evidence of ACE meetings noticed for Connecticut (for what appears to be the first time) mere months before they filed this instant action. The parties' relationships have clearly soured as demonstrated by the 2021 failed attempt to remove Matulich and the numerous lawsuits between the parties. For these reasons, there appears to be jurisdictional manipulation. Plaintiffs have not provided evidence to the contrary; therefore, the Court looks to the parties' citizenships prior to the hostility—the

---

[5] At this juncture, the undersigned makes no conclusion about the validity of these removals or Matulich's current status with ACE, which is the subject of this action. (*See* FAC 13.)

time period of 2019 to 2020. *See Horn II*, 2018 WL 5801875, at \*1-2 (looking at time period prior to filing of action to determine jurisdictional manipulation). During that time frame, ACE's minutes, each one signed by Brian Mass, list the location of board meetings as San Francisco, California, or using California time. (*See* ECF No. 18-2 at 28, 34, 43, 51, 62.)[6] The last of these ACE board meetings occurred on February 5, 2020, pre-COVID-19 pandemic, and was held via conference call. (*Id.* at 62.) Therefore, the Court concludes that ACE's principal place of business for the instant action is San Francisco, California. With Matulich as a citizen of California, the parties are not diverse, and the Court does not need to analyze the amount in controversy to conclude that there is no diversity subject matter jurisdiction.

## IV. CONCLUSION

Given the lack of diversity subject matter jurisdiction, the Court GRANTS Defendant Matulich's motion to dismiss (ECF No. 31) and dismisses the action. As such, the Court lacks authority to rule on the merits of Plaintiffs' motion to enjoin arbitration (ECF No. 33).

IT IS SO ORDERED this 29th day of September, 2023.

_____

RAMONA V. MANGLONA
Designated Judge

---

[6] The Hawaii Arbitration Panel conclusion that "[n]o ACE board meetings were ever held in person at the designated corporate office [located in San Francisco]—all actions of the ACE board were always handled by electronic communications[,]" (Compl. 27) does not necessarily negate this Court's conclusion that ACE's principal place of business is California. The meeting minutes place the location of the board meetings as San Francisco. Moreover, ACE's 2022 board meetings are noticed for Connecticut but also appear to be conducted via electronic communications with various board members appearing virtually (*see* Mass Decl. ¶ 7); nevertheless, Plaintiffs similarly contend that Connecticut is ACE's principal place of business (FAC ¶ 5).